**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - **x**
                                  :
**UNITED STATES OF AMERICA**      :
                                  :
            -v.-                  :     S1 07 Cr. 1170 (LBS)
                                  :
**JOSEPH P. COLLINS,**            :
                                  :
               **Defendant.**     :
                                  :
- - - - - - - - - - - - - - - - - **x**


### GOVERNMENT'S REQUESTS TO CHARGE


                         **LEV L. DASSIN**
                         **Acting United States Attorney**
                             **for the**
                         **Southern District of New York**
                         **Attorney for the United States**
                             **of America**


**CHRISTOPHER L. GARCIA**
**NICHOLAS S. GOLDIN**
**Assistant United States Attorneys**

        **- Of Counsel -**

## TABLE OF CONTENTS

<u>Request No.</u>

1    General Requests. . . . . . . . . . . . . . . . . . 2

2    The Indictment. . . . . . . . . . . . . . . . . . . 3

3    Count One: Conspiracy - General Instructions. . . . . 5

4    Count One: Conspiracy - Elements of Conspiracy. . . . 7

5    Count One: Conspiracy
        First Element – Existence of the Conspiracy. . . 9

6    Count One: Conspiracy -
        Objects of the Conspiracy. . . . . . . . . . . 11

7    First Object - Securities Fraud:
        General Instructions.. . . . . . . . . . . . . 13

8    First Object - Securities Fraud:
        The Elements of the Offense. . . . . . . . . . 17

9    First Object - Securities Fraud:
        First Element - Fraudulent Act.. . . . . . . . 18

10   First Object - Securities Fraud:
        Second Element - Knowledge, Intent and
        Wilfulness.. . . . . . . . . . . . . . . . . . 23

11   First Object - Securities Fraud:
        Third Element - Use of Mails or Interstate
        Commerce.. . . . . . . . . . . . . . . . . . . 27

12   Second Object - False Statements in SEC Filings:
        General Instructions.. . . . . . . . . . . . . 29

13   Second Object - False Statements in SEC Filings:
        First Element - Required Filings.. . . . . . . 31

14   Second Object - False Statements in SEC Filings:
        Second Element - Falsity.. . . . . . . . . . . 32

15   Third Object - False Statements in a
        Registration Statement.. . . . . . . . . . . . 34

16   Fourth Object - Wire Fraud:
        General Instructions.. . . . . . . . . . . . . 37

17   Fourth Object - Wire Fraud:
         Elements of the Offense.. . . . . . . . . .   38

18   Fourth Object - Wire Fraud:
         First Element - Existence of a Scheme or
         Artifice.. . . . . . . . . . . . . . . . .   39

19   Fourth Object - Wire Fraud:
         Second Element - Knowledge, Intent and
         Willfulness . . . . . . . . . . . . . . . .   42

20   Fourth Object - Wire Fraud:
         Third Element - Use of Interstate or
         Foreign Wires . . . . . . . . . . . . . . .   47

21   Fifth Object - False Statements to Auditors.. . . .   49

22   Sixth Object - Bank Fraud:
         General Instructions.. . . . . . . . . . .   51

23   Sixth Object - Bank Fraud: Elements . . . . . . . .   53

24   Sixth Object - Bank Fraud:
         First Element - Existence of Scheme or Artifice.   55

25   Sixth Object - Bank Fraud:
         Second Element – Participation in Scheme with
         Intent to Defraud . . . . . . . . . . . . .   60

26   Sixth Object - Bank Fraud:
         Third Element - Federally Insured
         Financial Institution. . . . . . . . . . .   63

27   Seventh Object - Money Laundering:
         General Instructions.. . . . . . . . . . .   64

28   Seventh Object - Money Laundering:
         Elements.. . . . . . . . . . . . . . . . .   65

29   Seventh Object - Money Laundering:
         First Element - Transaction In or
         Affecting Interstate Commerce. . . . . . .   67

30   Seventh Object - Money Laundering:
         Second Element - Criminally Derived Property
         in Excess of $10,000.. . . . . . . . . . .   69

31   Seventh Object - Money Laundering:
         Third Element - Proceeds of Unlawful Activity.  70

32   Seventh Object - Money Laundering:
         Fourth Element - Knowingly Engaged in
         Unlawful Transaction.. . . . . . . . . . . . .  71

33   Count One - Conspiracy
         Second Element - Membership in the Conspiracy. .  73

34   Count One - Conspiracy
         Third Element - Overt Acts . . . . . . . . . .  79

35   Counts Two and Three: Securities Fraud. . . . . . .  82

36   Counts Four and Five:
         False Statements in a Registration Statement.. .  85

37   Counts Six Through Nine: Wire Fraud.. . . . . . . .  87

38   Counts Ten Through Fourteen: Bank Fraud.. . . . . .  89

39   Aiding and Abetting . . . . . . . . . . . . . . . .  91

40   Willfully Causing a Crime . . . . . . . . . . . . .  95

41   Pinkerton Liability . . . . . . . . . . . . . . . .  97

42   Venue . . . . . . . . . . . . . . . . . . . . . . . 100

43   Variance in Dates and Amounts . . . . . . . . . . . 101

44   Conscious Avoidance
         [If Applicable] . . . . . . . . . . . . . . . . 102

45   Similar Act Evidence. . . . . . . . . . . . . . . . 105

46   Cooperating Witness Testimony . . . . . . . . . . . 108

47   Character Testimony
         [If Applicable] . . . . . . . . . . . . . . . . 113

48   Testimony of Law Enforcement Officers
         [If Applicable]. . . . . . . . . . . . . . . . . 114

49   Defendant's Testimony
         [Requested only if defendant testifies] . . . . 115

50   Defendant's Right to Testify
         [If requested by defense]. . . . . . . . . . . . 116

51  Uncalled Witnesses - Equally Available to Both Sides
        [If Applicable] . . . . . . . . . . . . . . . . 117

52  Particular Investigative Techniques Not Required
        [If Applicable] . . . . . . . . . . . . . . . . 118

53  Persons Not on Trial . . . . . . . . . . . . . . . 119

54  Summary Charts . . . . . . . . . . . . . . . . . . 120

55  Conclusion . . . . . . . . . . . . . . . . . . . . 122

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - -x
                                    :
**UNITED STATES OF AMERICA**         :
                                    :
          **-v.-**                   :     **S1 07 Cr. 1170  (LBS)**
                                    :
**JOSEPH P. COLLINS,**               :
                                    :
                  **Defendant.**     :
                                    :
- - - - - - - - - - - - - - - - - -x

### GOVERNMENT'S REQUESTS TO CHARGE

Pursuant to Rule 30 of the Federal Rules of Criminal Procedure, the Government respectfully requests that the Court include the following in its charge to the jury.

<u>REQUEST NO. 1</u>

<u>General Requests</u>

The Government respectfully requests that the Court give its usual instructions to the jury on the following matters:

a.   Function Of Court And Jury.

b.   Indictment Not Evidence.

c.   Statements Of Court And Counsel Not Evidence.

d.   Burden Of Proof And Presumption Of Innocence.

e.   Reasonable Doubt.

f.   Government Treated Like Any Other Party.

g.   Definitions, Explanations And Example Of Direct And Circumstantial Evidence.

h.   Credibility Of Witnesses.

i.   Right To See Exhibits And Have Testimony Read During Deliberations.

j.   Sympathy:  Oath Of Jurors.

k.   Punishment Is Not To Be Considered By The Jury.

l.   Verdict Of Guilt Or Innocence Must Be Unanimous.

m.   Stipulations.

2

REQUEST NO. 2

The Indictment

The defendant JOSEPH P. COLLINS is formally charged in an Indictment.  As I instructed you at the outset of this case, the Indictment is simply a charge or accusation.  It is not evidence.

The Indictment in this case contains a total of fourteen counts.  Each count charges the defendant with a different crime.  You will be called upon to render a separate verdict on each of these counts.

Count One of the Indictment charges the defendant with participating in a criminal conspiracy.  It alleges that this conspiracy had seven different objectives or objects: first, to commit securities fraud, second, to make and cause to be made false and misleading statements in a filing with the United States Securities and Exchange Commission, which going forward I will refer to as the "SEC," third, to make and cause to be made false and misleading statements in a registration statement filed with the SEC, fourth, to commit wire fraud, fifth, to make material misstatements to auditors, sixth, to commit bank fraud, and seventh, to commit money laundering.

As I will explain in more detail in a few moments, a conspiracy, such as the one charged in Count One here, is a criminal agreement to violate the law.  The other charges in the

3

Indictment, which are set forth in Counts Two through Fourteen, allege what are called "substantive" violations.  Unlike the conspiracy charge, which is a charge of agreeing to commit certain offenses, the substantive counts allege the actual commission of offenses.

The 13 substantive charges in the Indictment are as follows.  Counts Two and Three of the Indictment each charge the defendant with committing securities fraud.  Counts Four and Five each charge the defendant with making or causing to be made a false or misleading statement in a registration statement filed with the SEC.  Counts Six through Nine of the Indictment each charge the defendant with wire fraud.  Count Ten through Fourteen of the Indictment each charge the defendant with bank fraud. Each of these counts also charge the defendant with aiding and abetting the commission of the charged crime.

As I mentioned, each of the 13 crimes charged as a substantive offense in Counts Two through Fourteen are also charged as an object of the conspiracy in Count One.  As a result, I will discuss the law related to these substantive counts as part of my instructions on the conspiracy count.

Adapted from charge of the Honorable Leonard B. Sand in United States v. Rigas, 02 Cr. 1236 (LBS).

REQUEST NO. 3

Count One:  Conspiracy - General Instructions

With that summary of the Indictment as background, I will now give you detailed instructions that relate to the conspiracy charged in Count One.

Count One of the Indictment charges that the defendant, JOSEPH P. COLLINS, violated Section 371 of Title 18 of the United States Code.  That law provides as follows:

> If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose and one or more of such persons do any act to effect the object of the conspiracy, each. . . . [is guilty of a crime].

As I have already mentioned, Count One charges that the defendant, from at least as early as in or about 1997 up to in or about October 2005, took part with others in a conspiracy that had the following seven objects: (a) to commit securities fraud, (b) to make and cause to be made a false and misleading statement in a filing with the SEC, (c) to make and cause to be made a false and misleading statement in a registration statement filed with the SEC, (d) to commit wire fraud, (e) to make material misstatements to auditors, (f) to commit bank fraud, and (g) to commit money laundering.

The Indictment lists overt acts that are alleged to have been committed in furtherance of the conspiracy.

5

A conspiracy is a kind of criminal partnership -- a combination or agreement of two or more persons to join together to accomplish some unlawful purpose.

The crime of conspiracy to violate a federal law is an independent offense.  It is separate and distinct from the actual violation of any specific federal statutes, which the law refers to as "substantive crimes."

Indeed, you may find the defendant guilty of the crime of conspiracy to violate federal law even though none of the substantive crimes which were the object of the conspiracy was actually committed.

> Adapted from charge of the Honorable Leonard B. Sand in United States v. Rigas, 02 Cr. 1236 (LBS).
>
> See United States v. Labat, 905 F.2d 18, 21 (2d Cir. 1990) ("Since the essence of conspiracy is the agreement and not the commission of the substantive offense that is its objective, the offense of conspiracy may be established even if the collaborators do not reach their goal.")

<u>REQUEST NO. 4</u>

<u>Count One Conspiracy – Elements of Conspiracy</u>

Now, in order to sustain its burden of proof with respect to the allegation of conspiracy, the Government must separately establish beyond a reasonable doubt each of the following three essential elements:

<u>First</u>, the Government must prove beyond a reasonable doubt that two or more persons entered the unlawful agreement charged in the Indictment, that is, that there was in fact an agreement to commit at least one of the objects charged in the Indictment;

<u>Second</u>, the Government must prove beyond a reasonable doubt that the defendant knowingly and willfully became a member of the conspiracy, with intent to further its illegal purpose; and

<u>Third</u>, the Government must prove beyond a reasonable doubt that any one of the conspirators knowingly committed at least one of the overt acts charged in the Indictment in furtherance of the conspiracy.

Now let us separately consider these elements.

Adapted from the charge of the Honorable Leonard B. Sand in <u>United States</u> v. <u>Rigas</u>, 02 Cr. 1236 (LBS).

<u>See</u> <u>United States</u> v. <u>Maldonado-Rivera</u>, 922 F.2d 934, 961-62 (2d Cir. 1990) (quoting district court charge setting forth three elements of conspiracy), <u>cert</u>. <u>denied</u>, 111 S. Ct. 2858 (1991), and <u>United States</u> v.

7

Ciambrone, 787 F.2d 799, 810 (2d Cir.)
(discussing elements of conspiracy), cert.
denied, 479 U.S. 1017 (1986).

REQUEST NO. 5

Count One: Conspiracy
First Element - Existence of the Conspiracy

As I mentioned a moment ago, the first element the Government must prove beyond a reasonable doubt to establish the offense of conspiracy is that two or more persons entered the unlawful agreement charged in the Indictment.  You must ask: Did the conspiracy alleged in the Indictment exist?  Was there such a conspiracy?

In order for the Government to satisfy this element, you need not find that the alleged members of the conspiracy met together and entered into any express or formal agreement.  Similarly, you need not find that the alleged conspirators stated, in words or writing, what the scheme was, its object or purpose, or every precise detail of the scheme or the means by which its object or purpose was to be accomplished.  What the Government must prove is that -- in some way or in some manner, either explicitly or implicitly -- there was a mutual agreement, either spoken or unspoken, between two or more people to cooperate with each other to accomplish an unlawful act.

You may, of course, find that the existence of an agreement to disobey or disregard the law has been established by direct proof.  However, because conspiracy is, by its very nature, characterized by secrecy, you may also infer its

9

existence from the circumstantial evidence in this case and the conduct of the parties involved.

In this regard, you may, in determining whether an agreement existed here, consider the actions and statements of all those you find to be participants, including persons not charged as the defendant in this case, as proof that a common design existed to act together to accomplish an unlawful purpose.

As I mentioned earlier, the ultimate success of the conspiracy, or the actual commission of any of the crimes that are the objects of the conspiracy, is not relevant to the question of whether the conspiracy existed.

> Adapted from the charge of the Honorable Leonard B. Sand in United States v. Rigas, 02 Cr. 1236 (LBS).
>
> See United States v. Rea, 958 F.2d 1206, 1214 (2d Cir. 1992) ("In order to prove conspiracy, the Government need not present evidence of an explicit agreement; proof of a tacit understanding will suffice. The conspirators need not have agreed on the details of the conspiracy, so long as they have agreed on the essential nature of the plan, and their goals need not be congruent, so long as they are not at cross-purposes.") (citations omitted); United States v. Montour, 944 F.2d 1019, 1025 (2d Cir. 1991) ("To prove the existence of an agreement, the Government need not present evidence of a formal arrangement between the co-conspirators. Rather, it is sufficient if the Government can demonstrate that the defendant acted together with others to realize a common goal.") (citations omitted). See also United States v. Rubin, 844 F.2d 979, 983-84 (2d Cir. 1988) (generally discussing proof of agreement).

REQUEST NO. 6

Count One: Conspiracy - Objects of the Conspiracy

As I mentioned a few moments ago, a conspiracy is an agreement of two or more persons to accomplish by concerted action an unlawful purpose.  The Indictment charges seven such unlawful purposes -- also referred to as "objects" -- of the conspiracy.  I will now review each of those objects.  You should keep in mind that you need not find that the conspirators agreed to accomplish each one of these objects.  An agreement to accomplish any one of these objects is sufficient.

Although the finding of one unlawful objective is sufficient to satisfy the illegal purpose element, I instruct you that you the jury must unanimously agree on which object, if any, was the specific object or objects of the alleged conspiracy.  If the Government fails to prove beyond a reasonable doubt that at least one of the unlawful objectives alleged in Count One was in fact an objective of the conspiracy, or if you cannot unanimously agree as to which of the unlawful objects alleged in the Indictment have been proven beyond a reasonable doubt, then you must find the defendant not guilty as to the conspiracy charge.

Moreover, if you conclude that "an agreement" existed but that its purpose, even if unlawful, was not one of the specific unlawful objectives alleged in the Indictment, you must also find the defendant not guilty as to Count One.

11

I will now turn to the elements of each of the crimes alleged to have been objects of the charged conspiracy.

Adapted from the charge of the Honorable Leonard B. Sand in <u>United States</u> v. <u>Rigas</u>, 02 Cr. 1236 (LBS).

REQUEST NO. 7

First Object - Securities Fraud:
General Instructions

The first object of the conspiracy charged in the Indictment is to commit securities fraud in connection with the purchase and sale of securities issued by Refco.  The Indictment charges, in summary, that it was an object of the conspiracy that the defendant JOSEPH COLLINS would and did make false and fraudulent misrepresentations and omissions to potential investors and the public in connection with purchases and sales of securities, specifically notes issued by Refco and the common stock of Refco Inc.

The relevant federal statute is Section 10(b)of the Securities Exchange Act of 1934.  That law provides in pertinent part:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange . . .
>
> (b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered ... any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors.

Based on its authority under this statute, the SEC has created a number of rules and regulations, one of which, known as Rule 10b-5, is relevant here.  Rule 10b-5 reads as follows:

> **Employment of Manipulative and Deceptive Devices.**  It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange,
>
> (a) To employ any device, scheme, or artifice to defraud,
>
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, or
>
> (c)  To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,
>
> in connection with the purchase or sale of any security.

The 1934 Securities Exchange Act was the second of two laws passed by Congress to provide a comprehensive plan to protect the investing public in the purchase and sale of securities that are publicly distributed.  Let me briefly discuss the history and purpose of the first of these acts -- the Securities Act of 1933 -- for two reasons: first, so you have a better understanding of the entire legislative scheme; and second, because I will be referring to the 1933 Securities Act in

my discussion of another one of the alleged objects of the charged conspiracy.

The stock market crash of 1929 led to much legislation in the area of federal regulation.  Included in this legislation was the Securities Act of 1933, and the creation of the Securities and Exchange Commission.  The Securities Act was enacted to protect the investing public in the purchase of stock that is publicly distributed.  The Act provides a comprehensive plan requiring full and fair disclosure of all important facts in connection with a distribution of securities.  Such disclosures are designed to enable the investing public to make realistic appraisals of the merits of securities so that investors can make informed investment decisions.

When it enacted the Securities Act, Congress recognized that the purchase of a stock is different from the purchase of a vegetable bought in a grocery store, in that the average investor is not in a position to make a personal investigation to determine the worth, quality, and value of securities.

The Securities Act of 1933 requires full and fair disclosures relating to the offering of securities to the investing public.  Following the Securities Act of 1933, Congress enacted the Securities Exchange Act of 1934 to ensure fair dealing and outlaw deceptive and inequitable practices by those selling or buying securities both on the securities exchanges and

in private face-to-face transactions.  Among the primary
objectives of the Exchange Act are the maintenance of fair and
honest securities markets and the elimination of manipulative
practices that tend to distort the fair and just price of
securities.  Congress recognized that any deceptive or
manipulative practice that influenced or related to trading
activity undermined the function and purpose of a free market.

> Adapted from the charge of the Honorable Leonard B.
> Sand in United States v. Rigas, 02 Cr. 1236 (LBS).

<u>REQUEST NO. 8</u>

<u>First Object – Securities Fraud:</u>
<u>The Elements of the Offense</u>

In order to establish that the defendant conspired to violate Section 10(b), the Government must prove beyond a reasonable doubt that two or more of the coconspirators agreed as follows:

<u>First</u>, that in connection with the purchase or sale of securities issued by Refco, they agreed to do any one or more of the following:

(1) employ a device, scheme or artifice to defraud, or

(2) make an untrue statement of a material fact or omit to state a material fact which made what was said, under the circumstances, misleading, or

(3) engage in an act, practice or course of business that operated, or would operate, as a fraud or deceit upon a purchaser or seller;

<u>Second</u>, that they would act willfully, knowingly and with the intent to defraud; and

<u>Third</u>, that they agreed to knowingly use, or cause to be used, any means or instruments of transportation or communication in interstate commerce or the use of the mails in furtherance of the fraudulent conduct.

Adapted from the charge of the Honorable
Leonard B. Sand in <u>United States</u> v. <u>Rigas</u>, 02
Cr. 1236 (LBS).

17

<u>REQUEST NO. 9</u>

<u>First Object – Securities Fraud:</u>
<u>First Element – Fraudulent Act</u>

The first element the Government must prove beyond a reasonable doubt to establish a violation of Section 10(b) is that in connection with the purchase or sale of a security issued by Refco, the defendant agreed to do any one or more of the following:

(1) employ a device, scheme or artifice to defraud, or

(2) make an untrue statement of a material fact or omit to state a material fact which made what was said, under the circumstances, misleading, or

(3) engage in an act, practice or course of business that operated, or would operate, as a fraud or deceit upon a purchaser or seller.

It is not necessary for the Government to establish that the defendant conspired to commit all three types of unlawful conduct addressed above in connection with the purchase or sale of Refco securities.  Any one will be sufficient to satisfy the Government's burden of proof on this element if you so find beyond a reasonable doubt, but you must be unanimous as to which type of unlawful conduct you find to have been proven.

I will now define some of these terms for you.

18

"Devise, Scheme, or Artifice to Defraud"

A "device, scheme or artifice" is merely a plan for the accomplishment of any objective.

A "device, scheme or artifice to defraud" is a plan to accomplish a fraud.

"Fraud," in turn, is a general term which embraces all deceptive efforts and means that individuals devise to take wrongful advantage of others.  It includes all kinds of manipulative and deceptive acts.

The fraudulent or deceitful conduct alleged need not relate to the investment value of the securities involved in this case.

With respect to the "in connection with" aspect, you need not find that the defendant you are considering agreed to actually participate in any specific purchase or sale of a security if you find that the defendant agreed to participate in fraudulent conduct that was "in connection with" a purchase or sale of securities.  [Let me point out that the parties in this case have stipulated that (a) the 9% Senior Subordinated Notes referenced in the Indictment and (b) the common stock of Refco are "securities."]

The requirement that the fraudulent conduct be "in connection with" a purchase or sale of securities is satisfied if you find that there was some nexus or relation between the

19

allegedly fraudulent conduct and the sale or purchase of securities.  Fraudulent conduct may be "in connection with" the purchase or sale of securities if you find that the alleged fraudulent conduct "touched upon" a securities transaction.  If find the defendant agreed to engage in fraudulent conduct, such as the knowing and intentional public dissemination of materially false statements or omissions about Refco's business and affairs, for the purpose of affecting the market price of Refco's securities, you may find that such conduct satisfies the "in connection with" requirement.

It is no defense to an overall scheme to defraud that the defendant was not involved in the scheme from its inception or played only a minor role with no contact with the investors and purchasers of the securities in question.  Nor is it necessary for you to find that the defendant was or would be the actual seller or offeror of the securities.  It is sufficient if the defendant agreed to participate in the scheme or fraudulent conduct that involved the purchase or sale of securities.

By the same token, the Government need not prove that the defendant agreed to personally make the misrepresentation or omit the material fact.  It is sufficient if the defendant agreed to cause the statement to be made or the fact to be omitted.

With regard to the alleged misrepresentations and omissions, you must determine whether the statement would have

20

been true or false when it was made, and, in the case of alleged omissions, whether the omission would have been misleading.

"Material Fact"

If you find that the Government has established beyond a reasonable doubt that it was an object of the conspiracy that fraudulent statements or fraudulent omissions were to be made in connection with the purchase and sale of Refco securities, you must next determine whether these misrepresentations or omissions would have been material under the circumstances.  A material fact is one that would have been significant to a reasonable investor in making an investment decision.

Any testimony that you may have heard from any witness with respect to whether a particular fact would or would not have been important to him or to investors in general reflect that witness's individual views.  Although you may consider such testimony, it is not controlling.  It is for you to determine whether a particular fact would have been significant to a reasonable investor in making an investment decision.

This is not to say that it is a defense to the crime if the material misrepresentation or omission would not have deceived a person of ordinary intelligence.  If you find the conspiracy involved the making of material misrepresentations or omissions of material facts, it does not matter whether the intended victims were unsophisticated or sophisticated investors,

because the securities laws protect the unsophisticated as well as the experienced investor.

Nor does it matter whether the alleged unlawful conduct was or would have been successful or not, or that the defendant profited or would have profited as a result of the alleged scheme.  Success is not an element of a violation of Section 78j(b) or Rule 10b-5.

Adapted from the charge of the Honorable Leonard B. Sand in <u>United States</u> v. <u>Rigas</u>, 02 Cr. 1236 (LBS).

REQUEST NO. 10

First Object – Securities Fraud:
Second Element – Knowledge, Intent and Wilfulness

The second element of a violation of Section 10(b) that the Government must prove beyond a reasonable doubt is that the defendant agreed to participate in the scheme to defraud knowingly, willfully, and with the intent to defraud.

"Knowingly" means to act voluntarily and deliberately, rather than mistakenly or inadvertently.

"Willfully" means to act knowingly and purposely, with an intent to do something the law forbids, that is to say, with bad purpose either to disobey or disregard the law.

"Intent to defraud" in the context of the securities laws means to act knowingly and with the intent to deceive.

Whether a person acted knowingly, willfully and with intent to defraud is for you to determine, like any other fact issue.  This question involves one's state of mind.

Direct proof of knowledge and fraudulent intent is almost never available.  It would be a rare case where it could be shown that a person wrote or stated that as of a given time in the past he committed an act with fraudulent intent.  Such direct proof is not required.

The ultimate facts of knowledge and criminal intent, though subjective, may be established by circumstantial evidence, based upon a person's outward manifestations, his words, his

23

conduct, his acts, and all the surrounding circumstances disclosed by the evidence and the rational or logical inferences that may be drawn therefrom.

Circumstantial evidence, if believed, is of no less value than direct evidence.  In either case, the essential elements of the crime charged must be established beyond a reasonable doubt.

Because an essential element of the crime charged is intent to defraud, it follows that good faith on the part of the defendant is a complete defense to the charge of securities fraud.  A defendant, however, has no burden to establish a defense of good faith.  The burden is on the Government to prove fraudulent intent and consequent lack of good faith beyond a reasonable doubt.

Under the antifraud statutes, even false representations or statements or omissions of material facts do not amount to a fraud unless done with fraudulent intent.

However misleading or deceptive a plan may be, it is not fraudulent if it was carried out in good faith.  An honest belief by a defendant in the truth of the representations made is a good defense, however inaccurate the statements may turn out to be.

However, in considering whether or not a defendant acted in good faith, you are instructed that a belief by a

24

defendant, if such belief existed, that ultimately everything would work out so that no one would lose any money or be harmed does not require a finding by you that he acted in good faith. If you find that the actions when taken were in bad faith, no amount of honest belief on the part of a defendant that the scheme would ultimately cause no loss or harm will excuse fraudulent actions or false misrepresentations by him.

As a practical matter, then, in order to sustain the charges against the defendant, the Government must establish beyond a reasonable doubt that the defendant knew his conduct as a participant in the scheme was calculated to deceive and, nonetheless, he participated in the alleged fraudulent scheme.

To satisfy its burden of proof, the Government must prove beyond a reasonable doubt that the defendant was actually aware that the statement he was agreeing to make, or cause to be made, was materially false, or that he was actually aware that the fact he was agreeing to omit, or cause to be omitted, was material.

If you find that the defendant was not a knowing or willful participant in the scheme or lacked the intent to deceive, then this objective of the conspiracy cannot be satisfied. On the other hand, if you find that the Government has established beyond a reasonable doubt not only the first element, namely, the agreement to employ a scheme to defraud, but also

25

this second element, that the defendant was a knowing and willful participant and acted with intent to defraud, and if the Government also establishes the third element, about which I am about to instruct you, then you have a sufficient basis upon which to find that this objective of the conspiracy has been proven.

> Adapted from the charge of the Honorable Leonard B. Sand in <u>United States</u> v. <u>Rigas</u>, 02 Cr. 1236 (LBS).

REQUEST NO. 11

First Object - Securities Fraud:
Third Element - Use of Mails or Interstate Commerce

The third and final element of a violation of Section 10(b) that the Government must prove beyond a reasonable doubt is that the defendant agreed to knowingly use, or cause to be used, an instrumentality of interstate commerce or the mails in furtherance of the scheme to defraud or fraudulent conduct.

It is not necessary that the defendant be or would have been directly or personally involved in any mailing or use of any instrumentality of interstate commerce.  If the conduct alleged to be an objective of the conspiracy would naturally and probably result in the use of the mails or an instrumentality of interstate commerce, this element would be satisfied.

When one does an act with the knowledge that the use of interstate means of communication will follow in the ordinary course of business, or where such use can reasonably be foreseen, even though not actually intended, then he causes such means to be used.

Nor is it necessary that the items sent through the mails or communicated through an instrumentality of interstate commerce did or would contain the fraudulent material or anything criminal or objectionable.  The matter mailed or communicated may be entirely innocent.

27

The use of the mails or instrumentality of interstate commerce need not be central to the execution of the scheme and may even be incidental to it.  All that is required is that the use of the mails or instrumentality of interstate commerce bear some relation to the object of the scheme or fraudulent conduct.

In fact, the actual purchase or sale of a security need not be accompanied or accomplished by the use of the mails or instrumentality of interstate commerce, so long as the mails or instrumentality of interstate commerce are used in furtherance of the fraud and the defendant is still engaged in actions that are part of the scheme when the mails or the instrumentalities of interstate commerce are used.

That completes my description of the first of the seven alleged objects of the conspiracy.

Adapted from the charge of the Honorable Leonard B. Sand in United States v. Rigas, 02 Cr. 1236 (LBS).

REQUEST NO. 12

Second Object - False Statements in SEC Filings:
General Instructions

The second object of the conspiracy alleged in the Indictment is making, or causing to be made, false statements in reports and documents required to be filed with the SEC under the Securities Exchange Act of 1934.  This object charges violations of Section 32 of the Securities Exchange Act of 1934, Title 15, United States Code, Section 78ff.  This section is the general provision of the federal securities laws which makes it unlawful to willfully violate any provision of the Securities Exchange Act or any rule or regulation thereunder, by making materially false and misleading statements in applications, reports, and documents required to be filed with the SEC.

As charged in the Indictment, this object deals with the duty of public corporations to file annual and quarterly financial statements with the SEC.  Federal law requires public companies to file information with the SEC for the proper protection of investors and to ensure fair dealing in securities, such as stock or bonds, which are also called notes.  (Title 15, United States Code, Section 78m(a)).

In order to find this object proved, it is not necessary that you find an agreement to make false filings with respect to any particular SEC filing.  To establish guilt, it is

29

sufficient that the Government prove the agreement with respect to any required SEC filings.

To establish the crime of conspiracy with respect to this element, it is also not necessary for the Government to prove that such false filings were actually made.  If, however, you find that the Government has proved false filings did occur, you may, but you need not, consider that as evidence that there was an agreement among two or more persons to make false filings with the SEC.

REQUEST NO. 13

Second Object - False Statements in SEC Filings:
First Element — Required Filings

To prove this object, the Government must show, first,
that Refco Inc. was required by the Securities Exchange Act to
file the information or documents charged in this particular
object.  I instruct you that public corporations are required to
file documents and reports as prescribed by the SEC.  These
include annual reports on Form 10-K and quarterly reports on Form
10-Q.  Thus, if you find that Refco Inc. was a public
corporation, it was required to file these reports.

> Securities Exchange Act of 1934, Title 15, United
> States Code, Sections 78m(a), 78(o)(d), and Title
> 17, Code of Federal Regulations, Sections 240.13a-
> 1 and 13a-13 (Rules 13a-1 and 13a-13).

31

REQUEST NO. 14

Second Object - False Statements in SEC Filings:
Second Element – Falsity

The Government would next have to prove that at least two persons agreed to cause Refco Inc. to file the financial statement you are considering knowing that it would contain materially false and misleading statements.

A statement or representation is "false" if it was untrue when made, and known at the time to be untrue by the person making it or causing it to be made.

I have already explained the meaning of the term "material," and that definition applies here as well.

> Adapted from: TSC Industries v. Northway, Inc., 426 U.S. 438, 449-50 (1976); see also Basic, Inc. v. Levinson, 485 U.S. 224 (1988); Financial Accounting Standards Board (FASB) Concept Statement 2, ¶¶ 123-24, 132; American Institute of Certified Public Accountants (AICPA), Codification of Statements on Auditing Standards (AU) § 312.10 (". . . materiality judgments are made in light of surrounding cirumstances and necessarily involve both qualitative and quantitative considerations"); id., at § 312.34 ("[q]ualitative considerations also influence the auditor in reaching a conclusion as to whether misstatements are material"); SEC Staff Accounting Bulletin No. 99: Materiality, pp. 2-5 & nn. (http://www.sec.gov/ interps/account/sab99.htm); Sand, Modern Federal Jury Instructions Instrs. 36-10, 37-15.

To establish this objective of the conspiracy, the Government need not prove that it was agreed that a particular conspirator would himself or herself physically make or otherwise

personally prepare the statements in question.  It is sufficient if the Government has proved an agreement among at least two members of the conspiracy to cause materially false information to be filed by some person.

> Adapted from L. Sand, <u>Modern Federal Jury Instructions</u>-Criminal, 36-9.

REQUEST NO. 15

Third Object - False Statements in a Registration Statement

The third object of the conspiracy alleged in the Indictment is willfully making, or causing to be made, an untrue statement of material fact or a material omission in a registration statement filed with the SEC under the Securities Act of 1933.  (Section 24 of the Securities Act of 1933, Title 15, United States Code, Section 77x.)

In general, the 1933 Securities Act requires a company wishing to sell stock or other securities to disclose information about the issuing company which would be material to the investment decisions of a person interested in buying the stock or securities.  Under the 1933 Securities Act, the disclosure takes the form of a registration statement filed with the SEC. The registration statement contains information that is designed to protect investors by furnishing them with detailed knowledge of the company and its affairs to make it possible to form an informed investment decision.

Thus, in order to establish this object of the conspiracy, the Government must prove beyond a reasonable doubt that two or more coconspirators agreed as follows:

First, that they would file or cause to be filed a registration statement under the Securities Act of 1933; and

34

Second, that they would willfully make or cause to be made in such registration statement any untrue statement of a material fact or omit to state any material fact required to be stated therein or necessary to make the statements therein not misleading.

I have already explained what it means for a statement to be materially false and misleading.  I also defined the terms "knowingly" and "willfully" for you earlier in my discussion of the securities fraud object of the conspiracy.  As a reminder, "knowingly" means to act voluntarily and deliberately, rather than mistakenly or inadvertently.  "Willfully" means to act knowingly and purposely, with an intent to do something the law forbids, that is to say, with bad purpose either to disobey or to disregard the law.  Those definitions apply here as well.

[The parties in this case have stipulated that (a) the Form S-4 and Form S-1 documents referenced in the Indictment are registration statements within the meaning of the federal securities law and that these documents were filed with the SEC.]

In order to find this object proved, it is not necessary that you find an agreement to make a false statement in any particular registration statement.  To establish guilt, it is sufficient that the Government proves the agreement with respect to any registration statement filed with the SEC.

35

To establish the crime of conspiracy with respect to this element, it is also not necessary for the Government to prove that any such false registration statement was actually made.  If, however, you find that the Government has proved that a registration statement was filed that contained a materially false statement or material omission, you may, but you need not, consider that as evidence that there was an agreement among two or more persons to file a false registration statement with the SEC.

Adapted from L. Sand, Modern Federal Jury Instructions-Criminal, 3-57-13; Securities Act of 1933, Title 15, United States Code, Sections 77x.

REQUEST NO. 16

Fourth Object - Wire Fraud:
General Instructions

The fourth object of the charged conspiracy alleged in the Indictment is to commit wire fraud.  The defendant is alleged to have conspired to violate the federal wire fraud statute, which states:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be . . . [guilty of a crime].

> Adapted from the charge of the Honorable Leonard B. Sand in United States v. Rigas, 02 Cr. 1236 (LBS).

37

REQUEST NO. 17

Fourth Object - Wire Fraud:
Elements of the Offense

In order to establish the wire fraud object of the conspiracy, the Government must prove beyond a reasonable doubt that two or more of the coconspirators agreed as follows:

First, that there would be a scheme or artifice to defraud or to obtain money or property by materially false or fraudulent pretenses, representations, or promises, as alleged in the Indictment;

Second, that they would knowingly and willfully devise or participate in the scheme or artifice to defraud, with knowledge of its fraudulent nature and with the specific intent to defraud; and

Third, that, in the execution of that scheme, they would use, or cause the use of, interstate wires.

Adapted from the charge of the Honorable Leonard B.
Sand in United States v. Rigas, 02 Cr. 1236 (LBS).

REQUEST NO. 18

Fourth Object - Wire Fraud:
First Element - Existence of a Scheme or Artifice

The first element the Government must prove beyond a reasonable doubt is an agreement regarding a scheme or artifice to defraud or to obtain money or property by means of materially false or fraudulent pretenses, representations, or promises, as alleged in the Indictment.

I will now define some of the terms specific to wire fraud for you.

The language described in this first element is almost self-explanatory.  A "scheme or artifice" is simply a plan for the accomplishment of an object.

A "scheme to defraud" is any plan, device or course of action to deprive another of money or property by means of false and fraudulent pretenses, representations, or promises reasonably calculated to deceive persons of average prudence.

"Fraud" is a general term which embraces all of the various wrongful means by which human ingenuity can devise and which are resorted to by an individual to gain an advantage over another by false pretenses, representations or promises.

Thus, a "scheme to defraud" is merely a plan to deprive another of money or property by trick, deceit, deception or swindle.

39

A "pretense, representation or promise" is false if it was untrue when made and was then known to be untrue by the person making or causing it to be made.

A "pretense, representation or promise" is fraudulent if it was falsely made with the intent to deceive.  Deceitful statements of half truths or the concealment of material facts in a manner that makes what is said or represented deliberately misleading may also constitute false or fraudulent statements under the statute.

The false or fraudulent representation or concealment must relate to a material fact or matter.  As I have already explained to you, a material fact is one that would have been significant to a reasonable investor in making an investment decision.

In addition to proving that a statement was false or fraudulent and related to a material fact, in order to establish a scheme to defraud, the Government must prove that the alleged scheme contemplated depriving another of money or property.

It is not necessary that the Government prove that the defendant actually realized any gain from the scheme or that the intended victim actually relied on or suffered any loss as a result of any fraudulent representation or concealment of material facts. It is enough if you find that there was an agreement to make a false statement, or a misleading omission, as

40

part of a fraudulent scheme in the expectation that it would be relied upon.  You must concentrate on whether there was such a scheme, not on whether the scheme was successful. A scheme to defraud need not be shown by direct evidence, but may be established by all of the circumstances and facts in the case.

Adapted from the charge of the Honorable Leonard B. Sand in <u>United States</u> v. <u>Rigas</u>, 02 Cr. 1236 (LBS).

<u>REQUEST NO. 19</u>

<u>Fourth Object - Wire Fraud:</u>
<u>Second Element - Knowledge, Intent, and Willfulness</u>

The second element that the Government must establish beyond a reasonable doubt is that two or more conspirators agreed to devise or participate in the fraudulent scheme knowingly, willfully and with intent to defraud.

The words "devised" and "participated" are words that you are familiar with and, therefore, I do not need to spend much time defining them for you.  To "devise" a scheme to defraud is to concoct or plan it.  To "participate" in a scheme to defraud means to involve oneself with it with a view and intent toward making it succeed.  While a mere onlooker is not a participant in a scheme to defraud, it is not necessary that a participant be someone who personally and visibly executes the scheme to defraud.

I defined the terms "knowingly" and "willfully" for you earlier in my discussion of the securities fraud object of the conspiracy, and you should apply those definitions here as well. As a reminder, "knowingly" means to act voluntarily and deliberately, rather than mistakenly or inadvertently. "Willfully" means to act knowingly and purposely, with an intent to do something the law forbids, that is to say, with bad purpose either to disobey or to disregard the law.

42

Under the wire fraud statute, the term "intent to defraud" has an added aspect.  Because the wire fraud statute protects people from frauds involving money and property, a person acts with "intent to defraud" if he acts knowingly and with the specific intent to deceive, for the purpose of causing some financial or property loss to another.  The mere fact that a defendant intended to achieve some financial gain for himself or stood to benefit from the fraudulent scheme is not sufficient.  Some actual financial harm or property loss to the victim must have been intended.

In this regard, a person is not deprived of money or property only when someone directly takes his money or property from him.  Rather, a person is also deprived of money or property when that person is provided false or fraudulent information that, if believed, would prevent him from being able to make informed decisions about what to do with his money or property.  In other words, a person is deprived of money or property when he is deprived of the right to control that money or property.  And he is deprived of the right to control that money and property when he receives false or fraudulent statements or where material facts are omitted that affect his ability to make discretionary economic decisions about what to do with that money or property.

The question of whether a person acted knowingly, willfully and with intent to defraud is a question of fact for you to determine, like any other fact question.  As I mentioned earlier, this question involves one's state of mind, and direct proof is not required.

Because an essential element of the crime charged is intent to defraud, it follows that good faith on the part of a defendant is a complete defense to a charge of wire fraud.  As I have already instructed you, the burden is on the Government to prove fraudulent intent and the consequent lack of good faith beyond a reasonable doubt. There is another consideration to bear in mind in deciding whether or not the defendant you are considering acted in good faith.  As I instructed you earlier, if a defendant agreed to participate in the scheme to defraud, then a belief by that defendant, if such belief existed, that ultimately everything would work out so that no one would lose any money does not require a finding by you that the defendant acted in good faith.  If you find that the actions when taken were in bad faith, then no amount of honest belief on the part of the defendant that the scheme would ultimately cause no loss will excuse fraudulent actions or fraudulent misrepresentations by him. As a practical matter, then, in order to sustain the charges against the defendant, the Government must prove beyond a reasonable doubt that the defendant knew that his contemplated

44

conduct as a participant in the scheme was calculated to deceive and, nevertheless, he agreed to participate in the alleged fraudulent scheme for the purpose of causing some loss to another.

> Adapted from the charge of the Honorable Leonard B. Sand in United States v. Rigas, 02 Cr. 1236 (LBS); Sand, Modern Federal Jury Instructions, Instr. 44-4 (based on the charge of the Honorable Edward Weinfeld in United States v. Ranney, 82 Cr. 771 (S.D.N.Y. 1983)); the charge of the Honorable Michael B. Mukasey in United States v. Uccio, 88 Cr. 906 (S.D.N.Y. 1989), aff'd, 917 F.2d 80 (1990); and the charge of the Honorable Charles S. Haight, Jr. in United States v. Rogers, 90 Cr. 377 (S.D.N.Y. 1991); see United States v. DiNome, 86 F.3d 277, 284 (2d Cir. 1996) (definition of property includes the right to control the use of one's assets; where defendant intends to deprive victim of information material to victim's decision on how to deal with his assets, required intent to defraud is present); see United States v. Trapilo, 130 F.3d 547, 550 n.3 (2d Cir. 1997) (interpreting wire fraud statute; "The term 'scheme to defraud' is measured by a 'nontechnical standard.  It is a reflection of moral uprightness, of fundamental honesty, fair play and right dealing in the general [and] business life of members of society. . . . The scheme exists although no misrepresentation of fact is made'") (citations omitted); United States v. Von Barta, 635 F.2d 999, 1005 & n.12 (2d Cir. 1980) (same); Gregory v. United States, 253 F.2d 104, 109 (5th Cir. 1958) (same); United States v. Ragosta, 970 F.2d 1085, 1089-90 (2d Cir.) (bank fraud statute; "[t]he term 'scheme to defraud,'. . . is not capable of precise definition.  Fraud instead is measured in a particular case by determining whether the scheme demonstrated a departure from fundamental honesty, moral uprightness, or fair play and candid dealings in the

general life of the community"; because 18
U.S.C. § 1344 is written in disjunctive,
"courts have required proof of
misrepresentation only when the defendant is
charged with violating" provision regarding
"scheme . . . to obtain . . . moneys . . . by
means of false or fraudulent . . .
representations"; under provision addressing
"schemes to defraud," statute "does not
require proof of a misrepresentation")
(citations omitted), <u>cert. denied</u>, 506 U.S.
102 (1997); <u>United States v. Richman</u>, 944
F.2d 323, 331-32 (7th Cir. 1991) (mail fraud;
"scheme to defraud" established even if no
misrepresentation made; it is "immaterial
that the [scheme] did not progress to the
point where [defendant] had to make false
representations" to victim; rejecting
defendant's request for instruction that
"false . . . representations must have been
made"; "'the mail fraud statute proscribes
fraudulent schemes' rather than specific
misrepresentations to the party to be
defrauded") (citations omitted); <u>United
States v. Karro</u>, 257 F.3d 112, 118 (2d Cir.
2001) (holding that a defendant who
intentionally provides false information to a
lender about her identity to obtain a credit
card has intent to defraud, whether or not
she intended to repay the credit card debts);
<u>United States v. Rossomando</u>, 144 F.3d 197,
201 & n.5 (2d Cir. 1998) (noting that
borrower who provides false information to a
lender intends to inflict economic harm on
lender notwithstanding intent to repay loan,
<u>i.e.</u>, "to deprive the bank of the ability to
determine the actual level of credit risk and
to determine for itself on the basis of
accurate information whether, and at what
price, to extend credit to the defendant");
<u>United States v. DiNome</u>, 86 F.3d 277, 284 &
n.7 (2d Cir. 1996) (holding that a borrower's
misrepresentation to mortgage lender about
income was sufficient to support wire fraud
conviction).

REQUEST NO. 20

Fourth Object - Wire Fraud:
Third Element - Use of Interstate or Foreign Wires

The third and final element that the Government must establish beyond a reasonable doubt as to the wire fraud object is that it was agreed that interstate wire facilities would be used in furtherance of the scheme to defraud.

The wire communication must pass between two or more states.  A wire communication includes, by way of example only, a telephone call, a fax, a transmission of computer signals, and a wire transfer of funds, each between different states or between the United States and abroad.

The use of the wire need not itself be fraudulent. Stated another way, the material sent by wire need not contain any fraudulent representation, or even any request for money.  It must, however, further or assist in the carrying out of the scheme to defraud.

It is not necessary for any one of the conspirators to be directly or personally involved in any wire communication, so long as the communication is reasonably foreseeable in the execution of the alleged scheme to defraud, that is, within the scope of the agreement to commit the unlawful object of wire fraud.  When one does an act with knowledge that the use of the wire will follow in the ordinary course of business, or where such use of the wires can reasonably be foreseen, even though not

47

actually intended, one causes the wires to be used. Incidentally, this wire communication requirement is satisfied even if the wire communication was or would be done by a person with no knowledge of the fraudulent scheme, including the victim of the alleged fraud.

Finally, if you find beyond a reasonable doubt that the wire communication was reasonably foreseeable and that the interstate wire communication charged in the Indictment took place, then this element is satisfied even if it was not foreseeable that the wire communication would cross state lines.

> Adapted from the charge of the Honorable Leonard B. Sand in <u>United States</u> v. <u>Rigas</u>, 02 Cr. 1236 (LBS).

48

REQUEST NO. 21

Fifth Object - False Statements To Auditors

The fifth object alleged in Count One of the Indictment is the making of, and causing to be made, materially false and misleading statements to Refco's auditors, in violation of Section 13 of the Securities Exchange Act, Title 15, United States Code, 78m, and Rule 13b2-2, Title 17, Code of Federal Regulations, Section 240.13b2-2.  The law prohibits directors and officers of public corporations from making or causing to be made false or misleading statements to accountants either in connection with an audit of the company or in connection with the preparation or filing of documents with the SEC.

To establish this object, the Government must prove that two or more persons agreed that a director or officer of a public company would, directly or indirectly, make or cause to be made a materially false or misleading statement; or that such an officer or director would, directly or indirectly, omit to state, or cause another person to omit to state, a material fact necessary in order to make the statements made, in light of the circumstances under which such statements were made, not misleading.  Such a material false statement or omission must be made to an accountant in connection with (1) an audit or examination of the financial statements of the company, or (2)

49

the preparation or filing of any document or report required to be filed with the SEC.

I have already described the concepts of falsity and materiality.  Those instructions apply here as well.

In order to find this object proved, it is not necessary that you find an agreement to make materially false and misleading statements or to omit any material facts with respect to any particular audit or examination of the financial statements of the company, or any particular document or report required to be filed with the SEC.

To establish the crime of conspiracy with respect to this object, it is also not necessary for the Government to prove that any such false and misleading statement or material omission was actually made.  If, however, you find that the Government has proved that such a false and misleading statement or material omission was made under the circumstances I just described, you may, but you need not, consider that as evidence that there was an agreement among two or more persons to carry out this object of the conspiracy.

> Section 13(b)(1) of the Securities Exchange Act, Title 15, United States Code, 78m(b)(1), and Rule 13b2-2, Title 17, Code of Federal Regulations, Section 240.13b2-2. Adapted from charge of the Honorable Barbara S. Jones in *United States* v. *Weissman*, 01 Cr. 529 (BSJ).

REQUEST NO. 22

Sixth Object - Bank Fraud:
General Instructions

The sixth object of the conspiracy charged in Count One

is an agreement to violate the federal bank fraud statute.  That

statute provides in pertinent part that it is a crime to:

>     knowingly execute[], or attempt[] to execute,
>     a scheme or artifice --
>
>     (1) to defraud a financial institution; or
>
>     (2) to obtain any of the moneys, funds,
>     credits, assets, securities, or other
>     property owned by, or under the custody or
>     control of a financial institution, by means
>     of false or fraudulent pretenses,
>     representations, or promises.

In this case, the defendant is charged with agreeing to

execute a scheme to defraud banks, including HSBC, that

participated in the financing of the leveraged buyout of Refco

led by Thomas H. Lee Partners.  The defendant is also charged

with agreeing to execute a scheme to defraud banks, including

JPMorgan Chase, that provided Refco with a revolving line of

credit at various times.

>     Adapted from the charge of the Honorable
>     Leonard B. Sand in United States v. Rigas, 02
>     Cr. 1236 (LBS); from the charge of the
>     Honorable Michael B. Mukasey in United States
>     v. Bello, 91 Cr. 571 (MBM) (S.D.N.Y. 1992),
>     aff'd mem.,    F.2d    (2d Cir. 1993); from
>     the charge of the Honorable Robert W. Sweet
>     in United States v. Morgenstern, 89 Cr. 693
>     (RWS) (S.D.N.Y. 1990), aff'd, 933 F.2d 1108
>     (2d Cir. 1991), cert. denied, 112 S. Ct. 1188
>     (1992).

51

See United States v. Stavroulakis, 952 F.2d
686, 694 (2d Cir.) ("Congress modeled the
bank fraud statute upon the mail and wire
fraud statutes, indicating that it wanted the
bank fraud statute to be just as broad as the
mail and wire fraud statutes. ...  [W]e look
to precedents arising under those statutes to
inform our interpretation of" the bank fraud
statute), cert. denied, 112 S. Ct. 1982
(1992), and United States v. Ragosta, 970
F.2d 1085, 1090 fn. 2 (2d Cir.), cert.
denied, 113 S. Ct. 608 (1992) (same).

REQUEST NO. 23

Sixth Object - Bank Fraud: Elements

We turn, then, to the elements of bank fraud, the sixth object alleged in the Indictment.

In order to prove that bank fraud was an object of the charged conspiracy, the Government must prove beyond a reasonable doubt the following three essential elements:

First, that two or more conspirators agreed to execute a scheme or artifice to defraud a bank, or that they agreed to execute a scheme or artifice to obtain money owned by or under the control or custody of that bank, by means of materially false or fraudulent pretenses, representations or promises;

Second, that they agreed to execute the scheme knowingly, willfully, and with the intent to defraud a bank; and

Third, that the bank involved was a federally chartered or insured financial institution.

Now I will explain each of the three elements of bank fraud in more detail.

> Adapted from the charge of the Honorable Leonard B. Sand in United States v. Rigas, 02 Cr. 1236 (LBS); from the charge of the Honorable Michael B. Mukasey in United States v. Bello, 91 Cr. 571 (MBM) (S.D.N.Y. 1992), aff'd mem.,    F.2d    (2d Cir. 1993); from the charge of the Honorable Robert W. Sweet in United States v. Morgenstern, 89 Cr. 693 (RWS) (S.D.N.Y. 1990), aff'd, 933 F.2d 1108 (2d Cir. 1991), cert. denied, 112 S. Ct. 1188 (1992).

> See United States v. Rodolitz, 786 F.2d 77, 80 (2d Cir.) (discussing elements of

53

analogous mail fraud violation), <u>cert</u>.
<u>denied</u>, 479 U.S. 826 (1986) and <u>United</u> <u>States</u>
v. <u>Stavroulakis</u>, 952 F.2d 686, 694 (2d Cir.)
(bank fraud statute modeled on mail and wire
fraud statutes), <u>cert</u>. <u>denied</u>, 112 S. Ct.
1982 (1992).

REQUEST NO. 24

Sixth Object - Bank Fraud:
First Element – Existence of Scheme or Artifice

_____ The first element that the Government must prove beyond

a reasonable doubt is that, on or about the dates set forth in

the Indictment, two or more coconspirators (1) agreed to execute

a scheme or artifice to defraud a bank, or (2) agreed to execute

a scheme or artifice to obtain money owned by or under the

control or custody of the bank by means of materially false or

fraudulent pretenses, representations, or promises.

Before I define these terms for you, let me explain

that the Government must prove that there was an agreement to

commit only one of these offenses.  That is, the Government needs

to prove either (1) that the co-conspirators agreed to execute a

scheme or artifice to defraud a bank or (2) that they agreed to

execute a scheme or artifice to obtain money, funds, credits or

assets under the custody or control of that bank by means of

materially false or fraudulent pretenses, representations, or

promises.  These are not necessarily mutually exclusive.  If you

find that they agreed to commit one or both of these offenses,

then the first element is satisfied.  Any finding that they

agreed to commit one or both of these offenses must be unanimous.

I will now explain to you what these terms mean, though

they are almost self-explanatory.

55

As I have already instructed you, a "scheme or artifice" is simply a plan, a device, or course of conduct to accomplish a wrongful objective.

A "scheme to defraud" a bank is a pattern or course of conduct designed to deceive a federally insured bank into releasing property with the intent to cause the bank to suffer an actual or potential loss.

The second type of conduct charged is a scheme to obtain a bank's money or property by means of false or fraudulent pretenses, representations, or promises, as described in the Indictment.  The Government must show that these false or fraudulent pretenses, representations or promises were directed at the bank with the intention of deceiving it.

A representation is false if it was untrue when made, and known at the time to be untrue by the person making it or causing it to be made.

A representation is fraudulent if it was fraudulently made with intent to deceive.

Deceitful statements of half truth, the concealment of material facts, and the expression of an opinion not honestly entertained may constitute false or fraudulent representations under the statute.

The false or fraudulent representation must relate to a material fact or matter.  As I have previously explained, a

56

material fact is one that a reasonable person would have considered important in making a decision.  It is not required that every misrepresentation charged in the Indictment be proved. It is sufficient if the Government proves beyond a reasonable doubt that one or more of the alleged material misrepresentations were made in furtherance of the alleged scheme and you are unanimous as to which misrepresentations, if any, were so made.

In order to establish the existence of a scheme, the Government is not required to establish that the defendant originated the scheme to defraud.  It is sufficient if you find that a scheme to defraud existed, even if originated by another.

Nor is it necessary for the Government to establish that the scheme actually succeeded -- that is, that the schemers realized any gain from the scheme or that the intended victim suffered any loss.  The issue is whether there was such a scheme.

Although it is not necessary for the Government to prove an actual loss of funds by the bank, the Government must prove beyond a reasonable doubt that by executing the scheme alleged in the Indictment, the defendant placed the bank at a risk of loss and that the bank did not knowingly accept such a risk. If you find that the Government has sustained its burden of proof that the defendant agreed to execute a scheme to defraud a bank or to obtain money from a bank by materially false

pretenses, representations or promises, as charged, you next

should consider the second element.

> Adapted from the charge of the Honorable
> Leonard B. Sand in United States v. Rigas, 02
> Cr. 1236 (LBS); from the charge of the
> Honorable Michael B. Mukasey in United States
> v. Bello, 91 Cr. 571 (MBM) (S.D.N.Y. 1992),
> aff'd mem.,    F.2d    (2d Cir. 1993); from
> the charge of the Honorable Robert W. Sweet
> in United States v. Morgenstern, 89 Cr. 693
> (RWS) (S.D.N.Y. 1990), aff'd, 933 F.2d 1108
> (2d Cir. 1991), cert. denied, 112 S. Ct. 1188
> (1992).

> See United States v. Ragosta, 970 F.2d 1085,
> 1089-91 (2d Cir.) (discussing what Government
> must show to establish "scheme to defraud"
> under first prong, § 1344(1); Government need
> not prove misrepresentation), cert. denied,
> 113 S. Ct. 608 (1992).  See also United
> States v. Stavroulakis, 952 F.2d 686, 694 (2d
> Cir.) ("[A] conviction under the `scheme to
> defraud' clause [§ 1344(1)] of the bank fraud
> statute requires that the defendant engage in
> or attempt to engage in a pattern or course
> of conduct designed to deceive a federally
> chartered or insured financial institution
> into releasing property, with the intent to
> victimize the institution by exposing it to
> actual or potential harm. ...  [T]he bank
> need not actually be victimized."), cert.
> denied, 112 S. Ct. 1982 (1992).

> See United States v. Bronston, 658 F.2d 920,
> 927 (2d Cir. 1981) (mail fraud; Government
> must show that "any nondisclosures or
> affirmative misrepresentations must have been
> material"), cert. denied, 456 U.S. 915
> (1982).  See also United States v.
> Swearingen, 858 F.2d 1555 (11th Cir. 1988)
> (discussing materiality requirement under
> bank fraud statute:  "[A]ctual reliance by
> the Bank on the false statements is not
> determinative.  The question is whether the
> false representations were capable of
> influencing the Bank's actions."), cert.

denied, 489 U.S. 1083 (1989).  See also
United States v. Halbert, 640 F.2d 1000, 1009
(9th Cir. 1981) (mail fraud; "A
misrepresentation may be material without
inducing any actual reliance.  What is
important is the intent of the person making
the statement that it be in furtherance of
some fraudulent purpose.") (citing United
States v. Regent Office Supply Co., 421 F.2d
1174, 1182 (2d Cir. 1970)).

REQUEST NO. 25

Sixth Object - Bank Fraud:
Second Element – Participation in Scheme with Intent to Defraud

The second element that the Government must establish beyond a reasonable doubt is that two or more coconspirators acted knowingly, willfully, and with specific intent to defraud a bank.

I have previously defined the terms "knowingly" and "willfully" for you, and I instruct you to use those definitions here.  I remind you that "knowingly" means to act voluntarily and deliberately, rather than mistakenly or inadvertently.  "Willfully" means to act knowingly and purposely, with an intent to do something the law forbids, that is to say, with bad purpose either to disobey or to disregard the law.

In the context of bank fraud, to act with "intent to defraud" means to act willfully and with the specific intent to deceive, for the purpose of defrauding a bank.

The question of whether a person acted knowingly, willfully and with the intent to defraud is a question of fact for you to determine, like any other fact question.  This question involves one's state of mind.

As I have already stated, it is not necessary for the Government to establish that the defendant originated the scheme to defraud.  It is enough if you find that a fraudulent scheme existed, even if originated by another, and that the defendant,

60

while aware of the scheme's existence, knowingly participated in it.

It is also not required that the defendant participated in or had knowledge of all of the operations of the scheme.  The guilt of the defendant is not governed by the extent of his participation.

It is also not necessary that the defendant participated in the alleged scheme from the beginning.  A person who comes in at a later point with knowledge of the scheme's general operation, although not necessarily of all of its details, and willfully and intentionally acts in a way to further the unlawful goals, becomes a member of the scheme and is legally responsible for all that may have been done in the past in furtherance of the criminal objective and all that is done thereafter.

Even if the defendant participated in the scheme to a lesser degree than others, he is nevertheless equally guilty, so long as the defendant, knowingly, willfully, and with an intent to defraud a bank, became a member of the scheme with knowledge of its general scope and purpose.

As I have explained to you, the ultimate facts of knowledge and criminal intent, though subjective, may be established by circumstantial evidence, based upon a person's outward manifestations, his words, his conduct, his acts and all

the surrounding circumstances disclosed by the evidence and the rational or logical inferences that may be drawn therefrom.

Because an essential element of the crime charged is intent to defraud a bank, it follows that good faith on the part of the defendant is a complete defense to a charge of bank fraud. As I have already stated, a defendant has no burden to establish a defense of good faith.  The burden is on the Government to establish fraudulent intent and the consequent lack of good faith beyond a reasonable doubt.

> Adapted from the charge of the Honorable Leonard B. Sand in United States v. Rigas, 02 Cr. 1236 (LBS); from the charge of the Honorable Michael B. Mukasey in United States v. Bello, 91 Cr. 571 (MBM) (S.D.N.Y. 1992), aff'd mem.,    F.2d    (2d Cir. 1993); from the charge of the Honorable Robert W. Sweet in United States v. Morgenstern, 89 Cr. 693 (RWS) (S.D.N.Y. 1990), aff'd, 933 F.2d 1108 (2d Cir. 1991), cert. denied, 112 S. Ct. 1188 (1992).

> See United States v. Stavroulakis, 952 F.2d 686, 694 (2d Cir.) (defining requisite intent to defraud under `scheme to defraud' clause of section 1344), cert. denied, 112 S. Ct. 1982 (1992), and United States v. Ragosta, 970 F.2d 1085, 1090 fn. 2 (2d Cir.), cert. denied, 113 S. Ct. 608 (1992) (same).

REQUEST NO. 26

Sixth Object - Bank Fraud:
Third Element – Federally Insured Financial Institution

The third and final element that the Government must prove beyond a reasonable doubt is that the bank in question -- that is, the bank that was the subject of the scheme or artifice -- was insured by the Federal Deposit Insurance Corporation. It is not necessary for the Government to prove that the defendant knew the identity of the particular financial institution or that the defendant knew that the institution was insured by the Federal Deposit Insurance Corporation.  It must prove, however, that the defendant intended to defraud a financial institution.

> Adapted from the charge of the Honorable Leonard B. Sand in United States v. Rigas, 02 Cr. 1236 (LBS); from the charge of the Honorable Michael B. Mukasey in United States v. Bello, 91 Cr. 571 (MBM) (S.D.N.Y. 1992), aff'd mem.,   F.2d   (2d Cir. 1993); from the charge of the Honorable Robert W. Sweet in United States v. Morgenstern, 89 Cr. 693 (RWS) (S.D.N.Y. 1990), aff'd, 933 F.2d 1108 (2d Cir. 1991), cert. denied, 112 S. Ct. 1188 (1992).

REQUEST NO. 27

Seventh Object - Money Laundering: General Instructions

The seventh object of the conspiracy charged in Count One is an agreement to violate one of the federal money laundering statutes.  That statute provides in pertinent part that it is a crime to:

> knowingly engage[] or attempt[] to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from specified unlawful activity [and do so either] in the United States or in the special maritime and territorial jurisdiction of the United States [or] outside the United States and such special jurisdiction but the defendant is a United States citizen.

> Adapted from 1 L. Sand, *et al.*, Modern Federal Jury Instructions-Criminal ¶ 50A.06 (Matthew Bender).

64

REQUEST NO. 28

Seventh Object - Money Laundering: Elements

We turn, then, to the elements of this seventh object alleged in the Indictment.

In order to prove that money laundering was an object of the charged conspiracy, the Government must prove beyond a reasonable doubt the following four essential elements:

First, that two or more conspirators engaged (or attempted to engage) in a monetary transaction in or affecting interstate commerce;

Second, that the monetary transaction involved criminally derived property of a value greater than $10,000;

Third, that the property was derived from specified unlawful activity, in this case securities fraud, wire fraud or bank fraud; and

Fourth, that the conspirators acted knowingly, that is, with knowledge that the transaction involved proceeds of a criminal offense, in this case securities fraud, wire fraud or bank fraud.

> Adapted from 1 L. Sand, *et al.*, Modern Federal Jury Instructions-Criminal ¶ 50A.06 (Matthew Bender); from the charge of the Honorable Naomi Reice Buchwald in United States v. Williams, 00 Cr. 1008 (NRB).

> See United States v. LaSpina, 299 165, 182 (2d Cir. 2002) (setting forth the "essential

65

elements" of money laundering under 18 U.S.C.
§ 1957).

REQUEST NO. 29

Seventh Object – Money Laundering:
First Element - Transaction In or Affecting Interstate Commerce

The first element which the Government must prove beyond a reasonable doubt is that two or more conspirators engaged in a monetary transaction in or affecting interstate commerce.

The term "monetary transaction" means the deposit, withdrawal, transfer, or exchange, in or affecting interstate or foreign commerce, of funds or a monetary instrument by, through, or to a financial institution.

The term "interstate or foreign commerce" means commerce between any combination of states, territories or possessions of the United States, or between the United States and a foreign country.

You must find that the transaction affected interstate commerce in some way, however minimal. This effect on interstate commerce can be established in several ways.

First, any monetary transaction with a financial institution insured by the FDIC affects interstate commerce, so if you find that the bank in question was insured by the FDIC that is enough to establish that the transaction affected interstate commerce.

67

Second, if you find that the source of the funds used in the transaction affected interstate commerce, that is sufficient as well.

Third, if you find that the transaction itself involved an interstate transfer of funds, that would also be sufficient.

Adapted from 1 L. Sand, *et al.*, <u>Modern Federal Jury Instructions-Criminal</u> ¶ 50A.06 (Matthew Bender).

REQUEST NO. 30

Seventh Object – Money Laundering:
Second Element - Criminally Derived Property in Excess of $10,000

The second element which the Government must prove beyond a reasonable doubt is that the monetary transaction involved criminally derived property having a value in excess of $10,000.

The term "criminally derived property" means any property constituting, or derived from, proceeds obtained from a criminal offense.  The Government is not required to prove that all of the property involved in the transaction was criminally derived property. However, the Government must prove that more than $10,000 of the property involved was criminally derived property.

> Adapted from 1 L. Sand, *et al.*, Modern
> Federal Jury Instructions-Criminal ¶ 50A.06
> (Matthew Bender).

69

REQUEST NO. 31

Seventh Object – Money Laundering:
Third Element - Proceeds of Unlawful Activity

The third element which the Government must prove beyond a reasonable doubt is that the defendant knew that the property involved in the financial transaction was the proceeds of some form of specified unlawful activity.

The term "specified unlawful activity" means any one of a variety of offenses defined by statute.  In this case, the Government has alleged that the funds in question were proceeds of securities fraud, wire fraud, and bank fraud.

I instruct you that, as a matter of law, securities fraud, wire fraud, and bank fraud fit within the definition of specified unlawful activities.

> Adapted from 1 L. Sand, *et al.*, Modern Federal Jury Instructions-Criminal ¶ 50A.06 (Matthew Bender); from the charge of the Honorable Naomi Reice Buchwald in United States v. Williams, 00 Cr. 1008 (NRB).

REQUEST NO. 32

Seventh Object – Money Laundering:
Fourth Element - Knowingly Engaged in Unlawful Transaction

The fourth element which the Government must prove
beyond a reasonable doubt is that the defendant knowingly engaged
in an unlawful monetary transaction, as defined above.

To satisfy this element, the Government must prove
beyond a reasonable doubt that the defendant knew that the
property involved in the financial transaction represented
proceeds from some form, though not necessarily which form, of
activity that constitutes a felony under state or federal law.  I
instruct you that in a prosecution for an offense under this
section, the Government is not required to prove that the
defendant knew the particular offense from which the criminally
derived property was derived, in this case securities fraud, wire
fraud or bank fraud. The Government only has to prove that the
defendant knew that the transaction involved criminally derived
property, which, I remind you, means any property constituting,
or derived from, proceeds obtained from a criminal offense.

Keep in mind that it is not necessary for all
conspirators to believe that the proceeds came from the same
unlawful activity; it is sufficient if the conspirators believed
that the proceeds came from some unlawful activity.

71

If you find that the Government has established, beyond a reasonable doubt, that the defendant knew that the transaction involved property derived from a criminal offense, then this element is satisfied.

This concludes a description of the four object crimes. As I instructed you earlier, you need not find that the conspirators agreed to accomplish all four of these alleged objects.  An agreement to accomplish any one of these alleged objects is sufficient.  However, you must be unanimous on the specific object or objects the conspirators agreed to try to accomplish.  On the other hand, if the Government fails to prove that at least one of the objects was an object of the conspiracy, then you must find the defendant not guilty on the conspiracy count.

Adapted from 1 L. Sand, *et al.*, <u>Modern Federal Jury Instructions-Criminal</u> ¶ 50A.06 (Matthew Bender); from the charge of the Honorable Naomi Reice Buchwald in <u>United States</u> v. <u>Williams</u>, 00 Cr. 1008 (NRB).

REQUEST NO. 33

Count One - Conspiracy
Second Element - Membership in the Conspiracy

So what we have dealt with so far with respect to Count
One is the first element of the crime of conspiracy and that is,
did the conspiracy exist?  And we turn now to the second element
which the Government must prove beyond a reasonable doubt to
establish the offense of conspiracy: Did the defendant knowingly,
willfully and voluntarily became a member of the charged
conspiracy, with intent to further its illegal purpose.

If you are satisfied that the conspiracy charged in the
Indictment existed, you must ask yourselves who the members of
that conspiracy were.  In deciding whether the defendant was, in
fact, a member of the conspiracy, you should consider whether the
defendant knowingly and willfully joined the conspiracy.  Did he
participate in it with knowledge of its unlawful purpose and with
the specific intention of furthering its unlawful objective as a
participant?

"Knowingly," "Willfully," and "Unlawfully"

As I have already instructed you many times, an act is
done "knowingly" and "willfully" if it is done purposefully and
deliberately, with an intent to do something the law forbids,
that is, the defendant's act must have been the product of the

73

defendant's conscious determination rather than the product of mistake, accident, mere negligence, or some other innocent purpose.

"Unlawful" simply means contrary to United States law. The defendant need not have known that he was breaking any particular law or any particular rule.  The defendant need only have been aware of the generally unlawful nature of his acts.

As I mentioned a moment ago, before a defendant can be found to have been a conspirator, you must find that he knowingly joined in the unlawful agreement or plan.  The key question, therefore, is whether the defendant joined the conspiracy with an awareness of at least some of the basic aims and purposes of the unlawful agreement.

It is important for you to note that a defendant's participation in the conspiracy must be established by independent evidence of his own acts or statements, as well as those of the other alleged conspirators, and the reasonable inferences which may be drawn from them.

A defendant's knowledge is a matter of inference from the facts proved.  Science has not yet devised a manner of looking into a person's mind and knowing what that person is thinking.  However, you do have before you evidence of certain acts and conversations alleged to have taken place with certain

74

defendant or in his presence.  The Government contends that these acts and conversations show beyond a reasonable doubt knowledge on the part of the defendant of the unlawful purposes of the charged conspiracy.  On the other hand, the defendant denies either that these acts and conversations took place or show that he had such knowledge. It is for you to determine whether the Government has established beyond a reasonable doubt that such knowledge and intent on the part of the defendant existed.

        To become a member of the conspiracy, the defendant need not have known the identities of each and every other member, nor need he have been apprised of all of their activities.  Moreover, the defendant need not have been fully informed as to all of the details, or the scope, of the conspiracy in order to justify an inference of knowledge on his part.  Furthermore, the defendant need not have joined in all of the conspiracy's unlawful objectives or have been involved in the conspiracy from the outset of the conspiracy.  Nor is it necessary that the defendant receive any monetary benefit from participating in the conspiracy.  While proof of a financial interest in the outcome of a scheme is not essential, if you find that the defendant had such an interest, that is a factor which you may properly consider in determining whether or not the defendant was a member of the conspiracy charged in the Indictment.

If you determine that the defendant became a member of the conspiracy, the extent of his participation in that conspiracy has no bearing on the issue of his guilt.  A conspirator's liability is not measured by the extent or duration of his participation.  Indeed, each member may perform separate and distinct acts and may perform them at different times.  Some conspirators play major roles, while others play minor roles in the scheme.  An equal role is not what the law requires.  In fact, even a single act may be sufficient to draw the defendant within the ambit of the conspiracy.

I want to caution you, however, that a defendant's mere presence at the scene of the alleged crime does not, by itself, make him a member of the conspiracy.  Similarly, mere association with one or more members of the conspiracy does not automatically make the defendant a member. A person may know, may be friendly with, or be related to a criminal, without being a criminal himself.  Mere similarity of conduct or the fact that they may have assembled together and discussed common aims and interests does not necessarily establish proof of the existence of a conspiracy.

I also want to caution you that mere knowledge or acquiescence, without participation, in the unlawful plan is not sufficient.  Moreover, the fact that the acts of the defendant, without knowledge, merely happened to further the purposes or

76

objectives of the conspiracy, does not make the defendant a
member.  More is required.  What is necessary is that the
defendant must have participated with knowledge of at least some
of the purposes or objectives of the conspiracy and with the
intention of aiding in the accomplishment of those unlawful ends.

In sum, the defendant, with an understanding of the
unlawful character of the conspiracy charged in the Indictment,
must have intentionally engaged, advised or participated in it
for the purpose of furthering its illegal objectives.  He thereby
becomes a knowing and willing participant in the unlawful
agreement -- that is to say, a conspirator.

A conspiracy, once formed, is presumed to continue
until either its objectives are accomplished or there is some
affirmative act of termination by its members.  So, too, once a
person is found to be a member of a conspiracy, that person is
presumed to continue being a member in the venture until the
venture is terminated, unless it is shown by some affirmative
proof that the person withdrew or disassociated himself from it.

> Adapted from the charge of the Honorable Leonard B.
> Sand in United States v. Rigas, 02 Cr. 1236 (LBS); from
> the charge of the Honorable Michael B. Mukasey in
> United States v. Bello, 91 Cr. 571 (MBM), aff'd mem.,
> 990 F.2d 622 (2d Cir. 1993).

> See United States v. Rea, 958 F.2d 1206, 1214
> (2d Cir. 1992) ("The defendant's knowledge of
> the conspiracy and participation in it with
> the requisite criminal intent may be

established through circumstantial evidence.
A defendant need not have joined a conspiracy
at its inception in order to incur liability
for the unlawful acts of the conspiracy
committed both before and after he or she
became a member.") (citations omitted).  <u>See
also</u> <u>United</u> <u>States</u> v. <u>Miranda-Ortiz</u>, 926 F.2d
172, 175-6 (2d Cir.) (generally discussing
proof required to show membership in
conspiracy), <u>cert</u>. <u>denied</u>, 112 S. Ct.  347
(1991); and <u>United</u> <u>States</u> v. <u>Maldonado-
Rivera</u>, 922 F.2d 934, 960 (2d Cir. 1990)
(same), <u>cert</u>. <u>denied</u>, 111 S. Ct. 2858 (1991).

REQUEST NO. 34

Count One - Conspiracy:
Third Element – Overt Acts

The third element that the Government must prove beyond a reasonable doubt, to establish the offense of conspiracy, is that at least one overt act charged in the Indictment was committed in furtherance of the conspiracy by one or more of the coconspirators.

The purpose of the overt act requirement is clear. There must have been something more than mere agreement; some overt step or action must have knowingly and willfully been taken by at least one of the conspirators in furtherance of the Indictment.

The Indictment alleges the following overt acts:

[The Court is respectfully requested to read the "Overt Acts" section of Count One of the Indictment.]

In order for the Government to satisfy this element, it is not required that all of the overt acts alleged in the Indictment be proven.  All that is required is that you find, beyond a reasonable doubt, that at least one of the overt acts charged in the Indictment was knowingly and willfully committed by at least one of the conspirators in furtherance of the conspiracy.

79

Although the finding of one overt act is sufficient to satisfy the overt act element, I instruct you that you the jury must unanimously agree on which, if any, was the specific overt act committed in furtherance of the conspiracy.

You need not find that the defendant committed the overt act.  It is sufficient for the Government to show that one of the conspirators knowingly and willfully committed an overt act charged in the Indictment in furtherance of the conspiracy. This is because such an act becomes, in the eyes of the law, the act of all of the members of the conspiracy.

You are further instructed that the overt act need not have been committed at precisely the time alleged in the Indictment.  It is sufficient if you are convinced beyond a reasonable doubt that it occurred at or about the time and place stated, as long as it occurred while the conspiracy was still in existence.

You should also bear in mind that the overt act, standing alone, may be an innocent, lawful act.  Frequently, however, an apparently innocent act sheds its harmless character if it is a step in carrying out, promoting, aiding or assisting the conspiratorial scheme.  You are therefore instructed that the overt act does not have to be an act which, in and of itself, is criminal or constitutes an objective of the conspiracy.

The Indictment charges that the conspiracy set forth in Count One existed from at least as early as in or about 1997 through up to in or about October 2005.  It is not essential that the Government prove that the conspiracy started and ended on those specific dates. Indeed, it is sufficient if you find beyond a reasonable doubt that the charged conspiracy, in fact, was formed and that it existed for some time within the period set forth in the Indictment, and that at least one of the overt acts alleged in the indictment was committed in furtherance of the charged conspiracy within that period.

That concludes my instructions with respect to conspiracy, and I will turn next to the substantive counts.  For now, remember that you need not find that the conspirators agreed to accomplish every one of these seven objects.  An agreement to accomplish any one of them is sufficient.  However, you must all agree on the specific object the conspirators agreed to try to accomplish.  On the other hand, if the Government fails to prove that at least one of these seven objects was an object of the conspiracy, then you must find the defendant not guilty on the conspiracy count.

> Adapted from the charge of the Honorable Leonard B. Sand in United States v. Rigas, 02 Cr. 1236 (LBS).

> See United States v. Provenzano, 615 F.2d 37 (2d Cir.) (discussing overt act requirement), cert. denied, 446 U.S. 953 (1980).

REQUEST NO. 35

Counts Two and Three: Securities Fraud

Counts Two and Three of the Indictment each charge that JOSEPH P. COLLINS, the defendant, committed fraud in connection with the sale or purchase of securities issued by Refco. Counts Two and Three each charge securities fraud in connection with a different sale or purchase of securities issued by Refco. Count Two relates to the purchase and sale of 9% Senior Subordinated Notes Due 2012, issued by Refco Group Ltd., LLC and Refco Finance, Inc. Count Two of the Indictment reads:

> [The Court is respectfully requested to read
> Count Two of the Indictment.]

Count Three relates to the purchase and sale of the common stock of Refco, Inc. Count Three of the Indictment reads:

> [The Court is respectfully requested to read
> Count Three of the Indictment.]

I have already explained the applicable securities fraud law and the elements that the Government must prove to you in connection with my discussion of the first object -- that is, securities fraud -- of the conspiracy charged in Count One.

However, as I explained earlier, to prove a substantive violation of the securities fraud statute, the Government must show not just an agreement to violate the law, but the actual commission of the crime defined by the statute.

82

Thus, in order to establish a violation of Section 10(b) in Count Two or Count Three, the Government must prove beyond a reasonable doubt the following three essential elements:

First, that (a) in connection with the purchase or sale of securities issued by Refco, (b) the defendant did any one or more of the following:

(1) employed a device, scheme or artifice to defraud, or

(2) made an untrue statement of a material fact, or omitted to state a material fact which made what was said, under the circumstances, misleading, or

(3) engaged in an act, practice or course of business that operated, or would operate, as a fraud or deceit upon a purchaser or seller;

Second, that the defendant acted willfully, knowingly and with the intent to defraud; and

Third, that the defendant knowingly used or caused to be used, any means or instruments of transportation or communication in interstate commerce or the use of the mails in furtherance of the fraudulent conduct.

Earlier, in discussing the conspiracy count, I defined the key terms relating to this charge. Those definitions apply here as well.

83

Adapted from the charge of the Honorable
Leonard B. Sand in <u>United States</u> v. <u>Rigas</u>, 02
Cr. 1236 (LBS).

REQUEST NO. 36

Counts Four and Five: False Statements in a

Registration Statement

Counts Four and Five of the Indictment each charge that JOSEPH P. COLLINS, the defendant, made or caused to be made in a registration statement filed with the SEC, untrue statements of material fact or omitted to state material facts required to be stated therein and necessary to make the statements therein not misleading.  Counts Four and Five each relate to different registration statements alleged to have been filed with the SEC.

Count Four relates to a registration statement filed with the SEC on or about April 6, 2005 on a document called a Form S-4.  Count Four of the Indictment reads as follows:

[The Court is respectfully requested to read Count Four of the Indictment.]

Count Five relates to a registration statement filed with the SEC on or about August 8, 2005 on a document called a Form S-1.  Count Five of the Indictment reads as follows:

[The Court is respectfully requested to read Count Five of the Indictment.]

I instructed you earlier, in connection with the third object of the conspiracy count, on the elements of this substantive offense.

85

As I explained earlier, however, in connection with this substantive charge, unlike in connection with the conspiracy count in Count One, the Government must show not just an agreement to violate the law, but the actual commission of the crime defined by the statute.  Thus, in order to establish the defendant's guilt on either Count Four or Count Five, the Government needs to prove the following two elements beyond a reasonable doubt:

First, that the defendant filed or caused to be filed a registration statement under the Securities Act of 1933; and

Second, that the defendant willfully made or caused to be made in such registration statement any untrue statement of a material fact or omitted to state any material fact required to be stated therein or necessary to make the statements therein not misleading.

Earlier, in discussing the conspiracy count, I defined the key terms relating to this charge, including the meaning of material and the meaning of willfully.  Those definitions apply here as well.

[As I have noted, the parties have stipulated that the Form S-4 and Form S-1 documents referred to in Counts 4 and 5 of the Indictment are registration statements filed with the SEC under the Securities Act of 1933.]

86

REQUEST NO. 37

Counts Six through Nine: Wire Fraud

Counts Six through Nine of the Indictment charge the defendant with having committed wire fraud.

Count Three of the Indictment alleges:

[The Court is respectfully requested to read Counts Six through Nine of the Indictment.]

I have already explained the wire fraud statute to you in connection with my discussion of the wire fraud object alleged in the conspiracy charge in Count One.

Again, to prove a substantive violation of a criminal offense, the Government must show not just an agreement to violate the law, but the actual commission of the crime defined by the statute.  Thus, in order to establish a violation of the wire fraud statute, the Government must prove the following beyond a reasonable doubt as to wire fraud count you are considering:

First, that there existed a scheme or artifice to defraud or to obtain money or property by materially false or fraudulent pretenses, representations, or promises, as alleged in the Indictment;

Second, that the defendant acted knowingly and willfully to devise or participate in the scheme or artifice to

87

defraud, with knowledge of its fraudulent nature and with specific intent to defraud; and

Third, that, in the execution of that scheme, the interstate wires were used or caused to be used, as alleged in the Indictment.

Earlier, in discussing the wire fraud object of the conspiracy count, I defined the key terms relating to these substantive wire fraud charges, and I ask you to use those definitions here as well.

> Adapted from the charge of the Honorable
> Leonard B. Sand in United States v. Rigas, 02
> Cr. 1236 (LBS).

REQUEST NO. 38

Counts Ten Through Fourteen: Bank Fraud

This brings us to Counts Ten through Fourteen of the Indictment, which charge JOSEPH P. COLLINS, the defendant, with Bank Fraud.

The Indictment charges:

[The Court is respectfully requested to read Count Four of the Indictment.]

I have already explained the bank fraud statute to you in connection with my discussion of the bank fraud object of the conspiracy charged in Count One.

As I explained earlier, to prove a substantive violation of the bank fraud statute, the Government must show not just an agreement to violate the law, but the actual commission of the crime defined by the statute in the manner that I have just read to you.  Thus, in order to establish a violation of the bank fraud statute, the Government must prove beyond a reasonable doubt:

First, that the defendant executed a scheme or artifice to defraud a bank, or that the defendant executed a scheme or artifice to obtain money owned by or under the custody or control of the bank, by means of materially false or fraudulent pretenses, representations, or promises.

89

Second, that the defendant executed the scheme knowingly, willfully, and with intent to defraud a bank; and

Third, that the bank involved was a federally chartered or insured financial institution.

Earlier, in discussing the conspiracy charge, I defined the key terms relating to this charge.  And, once again, I ask you to use those definitions here as well.

> Adapted from the charge of the Honorable
> Leonard B. Sand in United States v. Rigas, 02
> Cr. 1236 (LBS).

REQUEST NO. 39

Aiding and Abetting

With respect to each of the 13 substantive counts -- that is, Counts Two through Fourteen -- there are two other ways the Government may establish guilt.

One way is called "aiding and abetting," and the other is called "willfully causing a crime." That is, in each of these 13 counts, the defendant is charged not only as a principal who committed the crimes, but as an aider and abettor or with having willfully caused the crime.

The aiding and abetting statute, Title 18, United States Code, Section 2, reads, in part, as follows:

> Whoever commits an offense against the United States or aids or abets or counsels, commands induces, or procures its commission, is punishable as a principal.

Under the aiding and abetting statute, it is not necessary for the Government to show that a defendant himself physically committed the crime with which the defendant is charged in order for you to find that defendant guilty. Thus, if you do not find beyond a reasonable doubt that the defendant himself committed the crime charged, you may, under certain circumstances, still find the defendant guilty of that crime as an aider or abettor.

91

A person who aids or abets another to commit an offense is just as guilty of that offense as if the defendant committed it himself. Accordingly, you may find the defendant guilty of the substantive crime if you find beyond a reasonable doubt that the Government has proved that another person actually committed the crime and that the defendant aided and abetted that person in the commission of the offense.

As you can see, the first requirement is that another person has committed the crime charged. Obviously, no one can be convicted of aiding and abetting the criminal acts of another if no crime was committed by the other person in the first place. But if you do find that a crime was committed, then you must consider whether the defendant aided or abetted the commission of the crime.

To aid or abet another to commit a crime, it is necessary that the defendant willfully and knowingly associate himself in some way with the crime and that the defendant willfully and knowingly seek by some act to help make the crime succeed.

Participation in a crime is willful if action is taken voluntarily and intentionally, or, in the case of a failure to act, with the specific intent to fail to do something the law requires to be done; that is to say, with a bad purpose either to disobey or to disregard the law.

92

The mere presence of a defendant where a crime is being committed, even coupled with knowledge by the defendant that a crime is being committed, or the mere acquiescence by a defendant in the criminal conduct of others, even with guilty knowledge, is not sufficient to establish aiding and abetting.  An aider and abettor must have some interest in the criminal venture.

To determine whether the defendant aided or abetted the commission of the crime with which the defendant is charged, ask yourself these questions:

--   Did the defendant participate in the crime charged as something the defendant wished to bring about?

--   Did the defendant associate himself with the criminal venture knowingly and willfully?

--   Did the defendant seek by his actions to make the criminal venture succeed?

If the defendant did, then the defendant is an aider and abettor and therefore guilty as an aider and abettor of the offense.  If the defendant did not, then the defendant is not an aider and abettor, and is not guilty as an aider and abettor of that offense.

Adapted from 1 L. Sand, *et al.*, <u>Modern Federal Jury Instructions-Criminal</u> ¶ 11.01 (Matthew Bender); from the charge approved in <u>United States</u> v. <u>Stanchich</u>, 550 F.2d 1294 (2d Cir. 1977).

_____

See United States v. Labat, 905 F.2d 18, 23 (2d Cir. 1990) (discussing requirements of aiding and abetting liability); United States v. Clemente, 640 F.2d 1069 (2d Cir.) (same), cert. denied, 454 U.S. 820 (1981).

REQUEST NO. 40

Willfully Causing a Crime

The other potential means for establishing the defendant's guilt on Counts Two through Fourteen is through a finding beyond a reasonable doubt that the defendant willfully caused a crime.  Section 2(b) of the aiding and abetting statute, which relates to willfully causing a crime, reads as follows:

> Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States [shall be guilty of a federal crime].

What does the term "willfully caused" mean?  It means that the defendant himself need not have physically committed the crime or supervised or participated in the actual criminal conduct charged in the Indictment.

The meaning of the term "willfully caused" can be found in the answers to the following questions:

First, did the defendant take some action without which the crime would not have occurred?

Second, did the defendant intend that the crime would be actually committed by others?

If you are persuaded beyond a reasonable doubt that the answer to both of these questions is "yes" then the defendant is

95

guilty of the crime charged just as if the defendant himself had actually committed it.

> Adapted from 1 L. Sand, *et al.*, <u>Modern Federal Jury Instructions-Criminal</u> ¶ 11.02 (Matthew Bender).

> <u>     See</u> <u>Untied States</u> v. <u>Concepcion</u>, 983 F.2d 369, 383-84 (2d Cir. 1992); <u>United States</u> v. <u>Sliker</u>, 751 F.2d 477, 494 (2d Cir. 1984); <u>United States</u> v. <u>Margiotta</u>, 688 F.2d 108 (2d Cir. 1982); <u>United States</u> v. <u>Gleason</u>, 616 F.2d 2 (2d Cir. 1979); <u>United States</u> v. <u>Kelner</u>, 534 F.2d 1020, 1022-23 (2d Cir. 1976).

REQUEST NO. 41

Pinkerton Liability

There is another method by which you may evaluate the possible guilt of the defendant for the each of the substantive charges in the Indictment even if you do not find that the Government has satisfied its burden of proof with respect to each element of a particular substantive crime.

If, in light of my instructions, you find, beyond a reasonable doubt, that the defendant was a member of the conspiracy charged in Count One of the Indictment, and thus, guilty on the conspiracy count, then you may also, but you are not required to, find him guilty of the substantive crimes charged against him in Counts Two through Fourteen of the Indictment, provided you find, beyond a reasonable doubt, each of the following elements:

First, that the crime charged in the substantive count was committed;

Second, that the person or persons you find actually committed the crime were members of the conspiracy you found to have existed;

Third, that the substantive crime was committed pursuant to the common plan and understanding you found to exist among the conspirators;

97

<u>Fourth</u>, that the defendant was a member of that conspiracy at the time the substantive crime was committed; and

<u>Fifth</u>, that the defendant could have reasonably foreseen that the substantive crime might be committed by his co-conspirators.

If you find all five of these elements to exist beyond a reasonable doubt, then you may find the defendant guilty of the substantive crimes charged against him, even though he did not personally participate in the acts constituting the crimes or did not have actual knowledge of them.

The reason for this rule is simply that a co-conspirator who commits a substantive crime pursuant to a conspiracy is deemed to be the agent of the other conspirators. Therefore, all of the co-conspirators must bear criminal responsibility for the commission of the substantive crimes.

If, however, you are not satisfied as to the existence of any of these five elements, then you may not find the defendant guilty of the substantive crime, unless the Government proves, beyond a reasonable doubt, that the defendant personally committed, or aided and abetted the commission of, the substantive crime charged.

Adapted from 1 L. Sand, *et al.*, <u>Modern Federal Jury Instructions-Criminal</u> ¶ 19.03 (Matthew Bender).

See United States v. Salameh, 152 88 (2d Cir.
1998) ("Under the Pinkerton doctrine, 'a jury
[may] find a defendant guilty on a
substantive count without specific evidence
that he committed the act charged if it is
clear that the offense had been committed,
that it had been committed in the furtherance
of an unlawful conspiracy, and that the
defendant was a member of that
conspiracy.'"), cert. denied, 526 U.S. 1044
(1999).

REQUEST NO. 42

Venue

        Now, in addition to dealing with the elements of each
of the 14 offenses in the Indictment that I have just described,
you must also consider the issue of venue as to each offense,
namely, whether any act in furtherance of the  unlawful activity
occurred within the Southern District of New York.  I instruct
you that the Southern District of New York includes the counties
of Manhattan, the Bronx, Westchester, Rockland, Putnam, Dutchess,
Orange and Sullivan, so anything that occurs in those counties
occurs in the Southern District of New York.

        I note that on this issue, and this issue alone, the
Government need not offer proof beyond a reasonable doubt and
that it is sufficient if the Government proves venue by a mere
preponderance of the evidence.  A preponderance of the evidence
means to prove that the fact is more likely than not true.  Thus,
the Government has satisfied is venue obligations if you conclude
that it is more likely than not that any act in furtherance of
the crime you are considering occurred within the Southern
District of New York.

_____   Adapted from the charge of the Honorable
                 Leonard B. Sand in United States v. Rigas, 02
                 Cr. 1236 (LBS); from the charge of the
                 Honorable Naomi Reice Buchwald in United
                 States v. Williams, 00 Cr. 1008 (NRB).

REQUEST NO. 43

Variance in Dates and Amounts

The Indictment makes reference to various dates and amounts. It does not matter if the Indictment charges that a specific act occurred on or about a certain date or that a certain sum of money was involved, and the evidence indicates that, in fact, the act occurred on a different date or that a different amount of money was involved. The law requires only a substantial similarity between the dates and amounts alleged in the indictment and the dates and amounts established by the evidence. It is for you to determine whether any such difference is material and, if you find it was material, then you must find the defendant not guilty.

> Adapted from 1 Leonard B. Sand, *et al.*, <u>Modern Federal Jury Instructions</u> ¶ 3.01[2] (Matthew Bender).

REQUEST NO. 44

Conscious Avoidance

**[If applicable]**

As I have explained, each of the counts charged in the Indictment requires the Government to prove that the defendant acted knowingly and intentionally.

In determining whether the defendant acted knowingly, you may consider whether the defendant deliberately closed his eyes to what otherwise would have been obvious.

I would like to point out that the necessary knowledge on the part of the defendant with respect to each of the charges cannot be established by showing that the defendant was careless, negligent, or foolish.  However, one may not willfully and intentionally remain ignorant of a fact material and important to his conduct in order to escape the consequences of criminal law.

Thus, if you find beyond a reasonable doubt that the defendant was aware that there was a high probability that Refco's operating performance and financial results provided to banks and investors were false or misleading, but that the defendant deliberately and consciously avoided confirming this fact, then you may treat this deliberate avoidance of positive knowledge as the equivalent of knowledge, unless you find that the defendant actually believed that he was not engaged in such unlawful behavior.  In other words, a defendant cannot avoid

102

criminal responsibility for his own conduct by "deliberately closing his eyes," or remaining purposefully ignorant of facts which would confirm to him that he was engaged in criminal conduct.

Let me explain further what the concept of willful blindness or conscious avoidance means with respect to the conspiracy charge, Count One of the Indictment.

First, there is a difference between knowingly participating in a joint undertaking and knowing the object of that undertaking. "Conscious avoidance," as I have described it, cannot be used as a substitute for a finding that the defendant knowingly agreed to a joint undertaking. It is logically impossible for a defendant to agree to join another person unless he knows that he has made such an agreement.

However, if you find beyond a reasonable doubt that the defendant entered into such an agreement, in considering whether the defendant knew that the objective or goal of that agreement was to engage in wire fraud, bank fraud, securities fraud or money laundering, you may consider whether the defendant deliberately avoided confirming otherwise obvious facts about the purpose of the agreement, that is, whether he deliberately closed his eyes to what would otherwise have been obvious.

Adapted from the charge in United States v.
Mang Sun Wong, 884 F.2d 1537, 1541-43 (2d
Cir. 1989) (expressly approving charge),
cert. denied, 493 U.S. 1082 (1990); 1 L.

Sand, *et al.*, <u>Modern Federal Jury
Instructions-Criminal</u>, Instr. 3A-2, 44-5; the
charge of the Honorable Gerard E. Lynch in
<u>United States v. Ruiz</u>, S1 01 Cr. 864 (GEL)
(S.D.N.Y. 2002).

<u>See also</u> <u>United States</u> v. <u>Ebbers</u>, 458 F.3d
110, 124 (2d Cir. 2006) ("A conscious-
avoidance charge is appropriate when (a) the
element of knowledge is in dispute, and (b)
the evidence would permit a rational juror to
conclude beyond a reasonable doubt that the
defendant was aware of a high probability of
the fact in dispute and consciously avoided
confirming that fact"); <u>United States</u> v.
<u>Aina-Marshall</u>, 336 F.3d 167, 170 (2d Cir.
2003) ("a conscious avoidance instruction may
be given only (i) when a defendant asserts
the lack of some specific aspect of knowledge
required for conviction, ... and (ii) the
appropriate factual predicate for the charge
exists, <u>i.e.</u>, the evidence is such that a
rational juror may reach the conclusion
"beyond a reasonable doubt that the defendant
was aware of a high probability of the fact
in dispute and consciously avoided confirming
that fact"); <u>United States</u> v. <u>Ferrarini</u>, 219
F.3d 145, 154 (2d Cir. 2000) ("A conscious
avoidance instruction permits a jury to find
that a defendant had culpable knowledge of a
fact when the evidence shows that the
defendant intentionally avoided confirming
the fact").

104

REQUEST NO. 45

Other Act Evidence

[If applicable]

The Government has offered evidence tending to show that the defendant engaged in conduct not charged in the Indictment. [Specifically, you have heard evidence concerning the defendant's involvement in representing Refco and others in connection with a regulatory investigation of certain Refco entities in or about 1993.]

In that connection, let me remind you that the defendant is not on trial for committing acts not alleged in the Indictment.  Accordingly, you may not consider this evidence of other acts as a substitute for proof that the defendant committed the crimes charged in the Indictment.  Nor may you consider this evidence as proof that the defendant has a criminal personality or bad character.  The evidence of the defendant's conduct in 1993 was admitted for much more limited purposes and you may consider it only for those limited purposes.

Let me now discuss those limited purposes.

If you determine that the defendant committed the acts charged in the Indictment and also, as the Government argues, the other acts relating to the 1993 regulatory investigation of Refco entities, then you may, but need not, draw an inference that in doing the acts charged in the Indictment, the defendant acted

105

knowingly and intentionally and not because of some mistake, accident, or other innocent reasons. Thus, you may consider the defendant's conduct in or about 1993 in determining whether the defendant acted with knowledge and intent in carrying out the conduct charged in this case.

In addition, if you determine that the conspiracy charged in Count One of the Indictment existed, then in considering whether the defendant knowingly and intentionally joined that conspiracy, you may, but need not, consider the other acts relating to the 1993 regulatory investigation of Refco entities. More specifically, you may consider the defendant's representation of Refco entities and others in or about 1993 as proof of the nature of the relationship between the defendant and the members of the conspiracy, how that relationship developed, and the mutual trust, if any, shared by the defendant and the members of the conspiracy.

The evidence I have just discussed may not be considered by you for any other purpose. Specifically, you may not use this evidence to conclude that merely because the defendant committed the acts in 1993, he must also have committed the acts charged in the Indictment.

> Adapted from Sand, <u>Modern Federal Jury Instructions</u>,
> Instr. 5-25; <u>see</u> <u>United States v. Pitre</u>, 960 F.2d 1112,
> 1119 (2d Cir. 1992) ("upon request, the district court
> must give an appropriate limiting instruction to the
> jury" when admitting similar act evidence pursuant to
> Rule 404(b)) and the charge of the Honorable John F.

Keenan in <u>United States v. Carrero</u>, 91 Cr. 365
(S.D.N.Y. 1991).

REQUEST NO. 46

Cooperating Witness Testimony

You have heard from witnesses who testified that they were actually involved in carrying out aspects of the crimes charged in the Indictment and who testified pursuant to a cooperation agreement with the Government.

With respect to such witnesses, you have heard testimony that they pled guilty to charges arising out of some of the same facts as this case. You are instructed that you are to draw no conclusions or inferences of any kind about the guilt of the defendant on trial from the fact that prosecution witnesses pled guilty to similar charges. A witness's decision to plead guilty is a personal decision about his own guilt. It may not be used by you in any way as evidence against or unfavorable to the defendant on trial here.

You may consider the guilty plea only in determining the witness's believability. In that connection, let me remind you that the witnesses who testified pursuant to cooperation agreements pled guilty after entering into agreements with the Government to testify. There is evidence that, in exchange for the promise to testify truthfully, completely, and fully, the Government promised to bring their cooperation to the attention of the sentencing court. The Government is permitted to enter into this kind of plea agreement. You, in turn, may accept the

108

testimony of such a witness and convict a defendant on the basis of such testimony alone, if it convinces you of that defendant's guilt beyond a reasonable doubt.

However, you should bear in mind that a witness who has entered into such an agreement has an interest in this case different than an ordinary witness.  A witness who realizes that he may be able to obtain his own freedom, or receive a lighter sentence by giving testimony favorable to the prosecution, has a motive to testify falsely.  Therefore, you must examine such testimony with caution and weigh it with great care.  If, after scrutinizing such testimony, you decide to accept it, you may give it whatever weight, if any, you find it deserves.

The witnesses who you have heard who have testified pursuant to cooperation agreements have each admitted involvement in planning or carrying out aspects of the crimes charged in the Indictment.  There has been a great deal said about these witnesses in the summations of counsel and whether or not you should believe them.  The Government argues, as it is permitted to do, that it must take the witnesses as it finds them.  It argues that only people who themselves take part in criminal activity have the knowledge required to show criminal behavior by others. For these very reasons, the law allows the use of such testimony.  Indeed, it is the law in federal courts that the testimony of each such witness may be enough in itself for

109

conviction, if the jury finds that the testimony establishes guilt beyond a reasonable doubt.

However, it is also the case that the testimony of each such witnesses must be scrutinized with great care and viewed with particular caution when you decide how much of that testimony to believe.

I have given you some general considerations on credibility and I will not repeat them all here.  Nor will I repeat all of the arguments made on both sides.  However, let me say a few things that you may want to consider during your deliberations on the subject of such witnesses.

You should ask yourselves whether each of these witnesses would benefit more by lying or by telling the truth. Was their testimony made up in any way because they believed or hoped that they would somehow receive favorable treatment by testifying falsely?  Or did they believe that their interests would be best served by testifying truthfully?  If you believe that the witness was motivated by hopes of personal gain, was this motivation one which would cause him or her to lie, or was it one which would cause him or her to tell the truth?  Did this motivation color his or her testimony? In sum, you should look at all of the evidence in deciding what credence and what weight, if any, you will want to give to these witnesses' testimony.

Keep in mind that it does not follow that simply

because a person has admitted to participating in one or more crimes, that he or she is incapable of giving a truthful version of what happened. Like the testimony of any other witness, the testimony of someone who has participated in a crime should be given such weight as it deserves in light of the facts and circumstances before you, taking into account the witness's demeanor, candor, the strength and accuracy of a witness's recollection, his background, and the extent to which his testimony is or is not corroborated by other evidence in the case.

As with any witness, let me emphasize that the issue of credibility need not be decided in an all-or-nothing fashion. Even if you find that a witness testified falsely in one part, you still may accept his testimony in other parts, or may disregard all of it.  That is a determination entirely for you, the jury.

> Adapted from the charge of the Honorable Leonard B. Sand in United States v. Rigas, 02 Cr. 1236 (LBS); from the charge of the Honorable John F. Keenan in United States v. Carrero, 91 Cr. 365 (S.D.N.Y. 1991); and from the charge in United States v. Projansky, 465 F.2d 123, 136-37 fn. 25 (2d Cir.) (specifically approving charge set forth in footnote), cert. denied, 409 U.S. 1006 (1972).

> See United States v. Gleason, 616 F.2d 2, 15 (2d Cir. 1979) ("Where the court points out that testimony of certain types of witnesses may be suspect and should therefore be scrutinized and weighed with care, such as

111

that of accomplices or coconspirators . . . it must also direct the jury's attention to the fact that it may well find these witnesses to be truthful, in whole or in part.") (citations omitted), <u>cert. denied</u>, 444 U.S. 1082 (1980), and <u>United States</u> v. <u>Cheung Kin Ping</u>, 555 F.2d 1069, 1073 (2d Cir. 1977) (same).  <u>See also</u> <u>United States</u> v. <u>Swiderski</u>, 539 F.2d 854, 860 (2d Cir. 1976) (can be reversible error not to give accomplice witness charge if requested by defense).

REQUEST NO. 47

Character Testimony

**[If Applicable]**

You have heard testimony from some witnesses that the defendant has a good reputation for honesty and truthfulness in the community where he lives and works.

You may consider this character evidence along with all the other evidence in the case in determining whether the Government has proven, beyond a reasonable doubt, that the defendant committed the crimes charged.

> Adapted from the charge of the Honorable
> Leonard B. Sand in United States v. Rigas, 02
> Cr. 1236 (LBS).

REQUEST NO. 48

Testimony Of Law Enforcement Officers

***[If Applicable]***

You have heard testimony of some law enforcement officers.  The fact that a witness may be employed by the federal government as a law enforcement official does not mean that his or her testimony is necessarily deserving of more or less consideration or greater or lesser weight than of an ordinary witness.

At the same time, defense counsel may to try to attack the credibility of a law enforcement witness on the grounds that his or her testimony may be colored by a personal or professional interest in the outcome of the case.

It is your decision, after reviewing all the evidence, whether to accept the testimony of the law enforcement witnesses and to give that testimony whatever weight, if any, you find it deserves.

Adapted from Sand, Modern Federal Jury Instructions, Instr. 7-16.

114

<u>REQUEST NO. 49</u>

<u>Defendant's Testimony</u>

**[Requested if defendant testifies]**

The defendant in a criminal case never has any duty to testify or come forward with any evidence.  This is because, as I have told you, the burden of proof beyond a reasonable doubt remains on the government at all times, and the defendant is presumed innocent.

In this case, JOSEPH P. COLLINS did testify and was subject to cross-examination like any other witness. You should examine and evaluate the testimony just as you would the testimony of any witness with an interest in the outcome of the case.

> Approved in <u>United States</u> v. <u>Brutus</u>, 505 F.
> 3d 80, 88 & n.7 (2d Cir. 2007) (rejecting
> instructions stating that a defendant's
> interest in the outcome of a case gives him a
> motive to testify falsely).

115

REQUEST NO. 50

Defendant's Right Not to Testify

**[If requested by defense]**

The defendant did not testify in this case.  Under our Constitution, a defendant has no obligation to testify or to present any evidence, because it is the Government's burden to prove a defendant guilty beyond a reasonable doubt.  That burden remains with the Government throughout the entire trial and never shifts to a defendant.  A defendant is never required to prove that he or she is innocent.

You may not attach any significance to the fact that the defendant did not testify.  No adverse inference against him may be drawn by you because he did not take the witness stand. You may not consider this against the defendant in any way in your deliberations in the jury room.

Adapted from 1 L. Sand, *et al.*, <u>Modern
Federal Jury Instructions-Criminal</u> ¶ 5.07
(Matthew Bender).

116

REQUEST NO. 51

Uncalled Witnesses – Equally Available to Both Sides

**[If Applicable]**

There are several persons whose names you have heard during the course of the trial but who did not appear here to testify, and one or more of the attorneys has referred to their absence from the trial.  I instruct you that each party had an equal opportunity or lack of opportunity to call any of these witnesses.  Therefore, you should not draw any inferences or reach any conclusions as to what they would have testified to had they been called.  Their absence should not affect your judgment in any way.

You should, however, remember my instruction that the law does not impose on a defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence.

> Adapted from 1 L. Sand, *et al.*, <u>Modern Federal Jury Instructions-Criminal</u> ¶ 6.04 (Matthew Bender).

117

REQUEST NO. 52

Particular Investigative Techniques Not Required

**[If Applicable]**

You have heard reference, in the arguments of defense counsel in this case, to the fact that certain investigative techniques were not used by the Government.  There is no legal requirement, however, that the Government prove its case through any particular means.  While you are to carefully consider the evidence adduced by the Government, you are not to speculate as to why they used the techniques they did or why they did not use other techniques.  The Government is not on trial.  Law enforcement techniques are not your concern.  Your concern is to determine whether or not, on the evidence or lack of evidence, the defendant's guilt has been proved beyond a reasonable doubt.

> Adapted from the charge of the Honorable Pierre N. Leval in United States v. Mucciante, 91 Cr. 403 (PNL) (S.D.N.Y. 1992); from the charge of the Honorable John F. Keenan in United States v. Medina, 91 Cr. 894 (JFK) (S.D.N.Y. 1992).

118

REQUEST NO. 53

Persons Not On Trial

You may not draw any inference, favorable or unfavorable, toward the Government or the defendant, from the fact that any person in addition to the defendant was not named as a defendant in this case or was not tried with the defendant.  These matters are wholly outside your concern and must play no part in your deliberations.

You are about to be asked to decide whether or not the Government has proven beyond a reasonable doubt the guilt of this defendant, JOSEPH P. COLLINS.  You are not being asked whether any other person has been proven guilty. Your verdict should be based solely upon the evidence or lack of evidence as to the defendant, in accordance with my instructions and without regard to whether the guilt of other people has or has not been proven.

Adapted from the charge of the Honorable
Leonard B. Sand in United States v.
Rigas, 02 Cr. 1236 (LBS).

119

REQUEST NO. 55

Summary Charts

Some of the witnesses testified with respect to various charts, schedules, and summaries that were based on other evidence in the case.  The documents from which they were made are before you as evidence.  The charts, schedules, and summaries were intended to make the other evidence more meaningful and to aid you in considering the evidence.  Such charts, schedules, and summaries are no better than the testimony or the documents upon which they are based, and are not themselves independent evidence.  Therefore, you are to give no greater consideration to these charts, schedules, and summaries than you would give to the underlying evidence.

It is for you to decide whether the charts, schedules, and summaries correctly present the information contained in the testimony and in the exhibits on which they were based.  In the event that a chart, schedule, or summary differs from your recollection of the testimony or actual documents on which the chart, schedule, or summary is based, you are to rely on the testimony or actual document, not the chart, schedule, or summary.  You are entitled to consider the charts, schedules and summary if you find that they are of assistance to you in analyzing and understanding the

120

evidence.

> Adapted from the charge of the Honorable
> Leonard B. Sand in <u>United States</u> v.
> <u>Rigas</u>, 02 Cr. 1236 (LBS).

REQUEST NO. 55

## Conclusion

Your function now is to weigh the evidence in this case and to determine the guilt or innocence of the defendant with respect to each count of the Indictment.

You must base your verdict solely on the basis of the evidence and these instructions as to the law, and you are obliged on your oath as jurors to follow the law as I instruct you, whether you agree or disagree with the particular law in question.

The verdict must represent the considered judgment of each juror.  In order to return a verdict, it is necessary that each juror agree thereto.  Your verdict must be unanimous.

It is your duty, as jurors, however, to consult with one another, and to deliberate with a view to reaching an agreement, if you can possibly do so without violence to individual judgment.  Each of you must decide the case for him or herself, but do so only after an impartial discussion and consideration of all the evidence in the case with your fellow jurors.  In the course of your deliberations, do not hesitate to re-examine your own views, and change an opinion if convinced it is erroneous.  But do not surrender your honest conviction as to the weight or effect of evidence,

122

solely because of the opinion of your fellow jurors.

Remember at all times, you are not partisans.  You are judges -- judges of the facts.  Your sole interest is to seek the truth from the evidence in the case.

If you are divided, do <u>not</u> report how the vote stands and if you have reached a verdict do not report what it is until you are asked in open court.

In conclusion, Ladies and Gentlemen, I am sure that if you listen to the views of your fellow jurors and if you apply your own common sense you will reach a fair verdict here.

123

Remember that your verdict must be rendered without fear, without favor, and without prejudice or sympathy.

Adapted from the charge of the Honorable Arnold Bauman in United States v. Soldaro, 73 Cr. 167, Tr. at 2502-03 (S.D.N.Y. 1973). See also United States v. Corr, 75 Cr. 803, Tr. 5425-26 (S.D.N.Y.), aff'd, 543 F.2d 1042 (2d Cir. 1970).

Dated: New York, New York
       March 20, 2009

                         Respectfully submitted,

                         LEV L. DASSIN
                         Acting U.S. Attorney for the
                         Southern District of New York
                         Attorney for the United States
                            of America


                    By:  /s/ Nicholas S. Goldin
                         CHRISTOPHER L. GARCIA
                         NICHOLAS S. GOLDIN
                         Assistant U.S. Attorneys
                         No: (212) 637-2370/2372

124

## CERTIFICATE OF SERVICE

NICHOLAS S. GOLDIN deposes and says that he is employed in the Office of the United States Attorney for the Southern District of New York.

That on March 20, 2009, he caused a copy of the attached **GOVERNMENT'S REQUESTS TO CHARGE** to be served <u>By Federal Express</u> on:

William J. Schwartz, Esq.
Jonathan Bach, Esq.
Cooley Godward Kronish LLP
1114 Avenue of the Americas
New York, NY 10036
(212) 479-6470

I declare under penalty of perjury that the foregoing is true and correct.  28 U.S.C. Section 1746.

*/s/ Nicholas S. Goldin*
NICHOLAS S. GOLDIN

Executed on: March 20, 2009
            New York, New York